UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| FRANK D'AGOSTINO, INDIVIDUALLY AND ) <br> ON BEHALF OF ALL OTHERS SIMILARLY ) <br> SITUATED, ) <br>     Plaintiff ) <br> v. ) <br> ) <br> WFS FINANCIAL, INC., ) <br>     Defendant ) <br> ) | CASE NUMBER: <br> 3:07cv00161-CFD <br><br><br><br><br><br><br> MARCH 31, 2008 |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

### INTRODUCTION & PROCEDURAL BACKGROUND

Plaintiff, Frank D'Agostino, brought this consumer class action on behalf of himself and all other Connecticut consumers whose statutory rights were violated when their motor vehicles were repossessed by Defendant, WFS Financial, Inc. ("WFS"). He alleges that, after disposing of the class members' vehicles, WFS credited their accounts with only the net proceeds rather than the vehicles' fair market values as required by the Retail Installment Sales Financing Act ("RISFA"), Conn. Gen. Stat. § 36a-785. Plaintiff further alleges that this failure constituted a violation of the credit agreements and, consequently, violated Part Six of Article Nine of the Uniform Commercial Code ("UCC"), Conn. Gen. Stat. § 42a-9-601 *et seq*. Plaintiff also asserted subclass claims against WFS for its failure to provide timely notices to Plaintiff and members of the subclasses in violation of RISFA § 36a-785(c), RISFA § 36a-785(d), and UCC § 42a-9-612.

Plaintiff initially commenced this action in the Superior Court of the State of Connecticut, Judicial District of Hartford, with a return date of January 30, 2007. WFS removed the action on February 1, 2007, asserting that this Court has jurisdiction under 28 U.S.C. §

1332(d)(2)(A), as amended by the Class Action Fairness Act. Concerned that the amount in controversy might not exceed the five million ($5,000,000) dollar threshold for jurisdiction, the undersigned discussed the class size with counsel for WFS, who provided preliminary information that the class was sufficiently numerous for the class claims to be well in excess of that threshold, and Plaintiff elected not to seek a remand of the action.

WFS subsequently moved to dismiss this case on May 8, 2007, claiming that WFS, as an operating subsidiary of a national bank, was not subject to the repossession requirements or remedies of either RISFA or the UCC. Plaintiff opposed the motion, filing his memorandum of law in opposition on May 19, 2007.

On June 26, 2007, Plaintiff moved for an extension of time to move for certification of the class. The original deadline for certification was August 1, 2007. In its motion, which was filed with WFS's consent, Plaintiff represented:

> Plaintiff requires information that is in the defendant's possession in order to prepare his Motion for Class Certification, which he will not receive until after the court rules on defendant's motion to dismiss.

This extension of time was necessary, because WFS had resisted responding to Plaintiffs' discovery requests, which would have been very onerous, while a motion challenging the Court's jurisdiction of the action was pending. The Court granted this motion and extended the deadline to October 1, 2007.

Subsequently, the parties decided to discuss the possibility of attempting to settle this case on a class-wide basis, and, on July 3, 2007, the parties filed a Stipulation and Proposed Order to Facilitate Settlement Suggestions. The stipulation proposed vacating the scheduling order and advised the court that the parties' settlement discussions would be more productive if the court deferred ruling on the motion to dismiss. The parties further proposed that, if their

2

settlement discussions were not productive, that they file a new, proposed case management deadlines.  Although the court did not act upon this stipulation, it accommodated the parties' requests by granting multiple extension of time requests regarding the class certification motion (as described below) and, on March 12, 2009, it denied the motion to dismiss without prejudice to revive it after March 31, 2008 by filing a notice to that effect.

The parties did engage in settlement discussions beginning in the summer of 2007 but were not close to an agreement by the October 1, 2007 deadline.  On that date,  Plaintiff moved for a second extension of time until November 30, 2007 to file the class certification motion, again referencing the parties' settlement discussions.   The Court granted the motion and directed the parties to file a status report advising of the status of their discussions, which the parties did on November 1, 2007.  On November 2, 2007, Plaintiff filed a third motion to extend the time to file the class motion until January 29, 2008, again citing the parties' discovery discussions.  In this third motion, Plaintiff asserted that the parties had made some progress but could not make any additional progress until WFS had completed a labor-intensive file review.

Although the nature and the reason for this review were not specified in the motion, WFS was reviewing the class members' files to ascertain how many of them fell within the three subclasses asserted in the complaint.  This review was necessary, because Plaintiff's negotiation position for the subclass members differed significantly from the position for the remainder of the class members.  WFS took considerably longer to conduct this review than counsel had originally contemplated, and it became necessary for plaintiff to seek a fourth extension of time on January 25, 2008.  In this fourth extension, Plaintiff represented that WFS had made considerable progress with the file review, but that it had not yet been completed.  The undersigned stated in this motion:

> The undersigned has discussed the reasons for the delay in completing the file review with counsel for WFS Financial, Inc., and has expressed his concern regarding the length of time that this process has required. He is satisfied based upon the information provided to him that WFS Financial, Inc., is conducting the review in good faith, that the reasons for the delay are beyond the control of its counsel, and that it will not be necessary to seek a further extension of time after this one.

WFS did complete the review, and on February 19, the parties filed a joint status report reporting the completion of that review and the parties' plans to conduct a conference call to resume their settlement discussions on February 22, 2008. That conference call took place. The parties, however, remained far apart in their settlement positions. The undersigned believes that the major reason for the difference in their positions remains their differing views regarding the strength of WFS's motion to dismiss.

At the time that Plaintiff initially moved to extend the time to bring the class motion, he asserted that adjudication of the class motion would require the furnishing of discovery by WFS that was deferred pending adjudication of the motion to dismiss. Adjudication of the motion to dismiss was itself deferred for the parties' settlement discussions. Nevertheless, the deadline for the class certification motion is March 31, 2008, and plaintiff possesses sufficient information to assert a prima facie argument for class certification. Plaintiff accordingly brings this motion and respectfully requests that the Court schedule a status conference to address the proper manner of adjudicating the motion to dismiss and the motion for class certification.

## THE FACTUAL BASIS OF PLAINTIFFS' CLAIMS

Plaintiff purchased a pre-owned 2002 Nissan Pathfinder, the "Vehicle", from a Connecticut auto dealership pursuant to a retail installment sales contract that was subsequently assigned to WFS. Plaintiff fell behind on his payments, and WFS repossessed the Vehicle on May 19, 2006. On May 23, 2006, WFS sent Plaintiff a Notice of Repossession and Right to Redeem. *See* Ex. A. to Complaint. On June 9, 2006, WFS sent Plaintiff written notice of its

4

plan to sell the Vehicle at a private sale to occur some time after June 8, 2006 - - one day **prior to** the date of the notice. *See* Ex. B to Complaint. WFS subsequently sold the Vehicle, and on July 2, 2006, sent Plaintiff a Notice of Sale of Repossessed Property and Explanation of the Calculation of Surplus or Deficiency. *See* Ex. C to Complaint. In that notice, WFS credited Plaintiff's account balance with the net selling price of the vehicle and not the fair market value as defined by Conn. Gen. Stat. § 36a-785(g)[1], which amount far exceeded the actual selling price. This net recovery was not sufficient to pay the balance owed by Plaintiff on his account, and it sought from him a deficiency in the amount of $7,378.85.

The class ("Class") is comprised of individuals who are similarly situated to the plaintiff in that they:

   a. Purchased motor vehicles pursuant to installment loan contracts or installment sales contracts that were executed within the state of Connecticut and which were subsequently held by WFS;

   b. WFS repossessed and subsequently sold their vehicles within six years of the commencement of this action;

   c. The net proceeds of the sale were not sufficient to cover the actual and reasonable expenses of the resale, the actual and reasonable expenses of the retaking and storage of the vehicles, and the balance due under the retail installment contracts or installment sales contracts;

   d. WFS credited their accounts with only the net proceeds of the sale and subsequently attempted to collect the resulting deficiency by means of letters, phone calls, reports to credit bureaus, and or assignment or transfer of the accounts to debt collectors.

There are also three subclasses of class members to whom WFS failed to:

   a. Send a notice of right to reinstate the vehicle within three days of the ``repossession, ("Subclass A");

   b. Send a notice not less than ten days prior to the time and place of any public sale or the date after which any private sale may be made, ("Subclass B"); and,

---

[1] RISFA provides at § 36a-785(g) that the fair market value for motor vehicles is presumed to be the average NADA Eastern Edition retail and trade-in values, which presumption may be rebutted only by in court testimony. The fair market value of Plaintiff's vehicle was $15,625. *See* Exhibit A.

5

c. Give reasonable notice of the time and place of any public sale or the date after which any private sale may be made, ("Subclass C").

## **SUMMARY OF CLAIMS**

**FIRST COUNT: CLASS CLAIM FOR VIOLATION OF RISFA**

Conn. Gen. Stat. § 36a-785 requires the holder of a retail installment sales contract, following a repossession and sale, to credit the vehicle owner with the fair market value of the vehicle. Section 26a-785(g) provides that the presumptive value of the vehicle is the average of trade-in and retail values of the NADA Used Car Guide, Eastern Edition, which values can be rebutted only by in-court testimony. WFS did not credit the class members' accounts with the fair market value and made no effort to do so. It has engaged in collection and consumer credit reporting activity, even though it is not permitted to collect a deficiency greater than the contract balance plus the actual and reasonable costs of repossession and storage, reduced by the greater of the gross sale proceeds and the vehicle's fair market value, and it has therefore failed to comply with Conn. Gen. Stat. § 36a-785(f) and (g).

**SECOND COUNT: CLASS CLAIM FOR VIOLATIONS OF UCC**

The security agreements executed by the Members of the Class specifically limits WFS's rights and remedies after default by the Members of the Class to those provided by Connecticut law and the contract. Consequently, WFS breached the terms of the security agreements by seeking deficiencies in amounts greater than that permitted by RISFA, which is a violation of the UCC, Conn. Gen. Stat. § 42a-9-601.

## THIRD COUNT: SUBCLASS A CLAIM FOR VIOLATION OF RISFA

Although WFS sent the members of Subclass A with notices of their right to be reinstated under the contracts as required by Conn. Gen. Stat. § 36a-785(c)[2], the notices were not sent within three days of the repossession as required by the statute.

## FOURTH COUNT: SUBCLASS B CLAIM FOR VIOLATION OF RISFA

Although WFS sent the members of Subclass B notice of the day after which a private sale may be made, those notices were not sent by a date that was not less than ten days prior to that sale date in violation of Conn. Gen. Stat. § 36a-785(d).

## FIFTH COUNT: SUBCLASS C CLAIM FOR VIOLATION OF UCC

The notice to Plaintiff was not sent until after the disclosed date after which a private sale could take place and was therefore clearly not a reasonable notice within the meaning of Conn. Gen. Stat. § 42a-9-611 and § 42a-9-612. WFS has advised in the course of the settlement discussions that there are numerous other class members whose notices were similarly sent prior to the sale date or which were otherwise sent unreasonably late with regard to the sale date. Plaintiff will be able to ascertain which members of Subclass B are also within Subclass C after formal disclosures have been made by WFS.

Plaintiff seeks statutory damages under RISFA and the UCC. Plaintiff also seeks an Order requiring WFS to cease and desist all collection activities, return all amounts collected subsequent to the repossessions, and inform all credit bureaus to whom it reports that Plaintiff's and the Class members' accounts have a zero balance. This class action suit is the only mechanism by which these individuals, who are most certainly unaware of their claims, could ever receive the compensation to which they are entitled.

## ARGUMENT

### I. GENERAL LEGAL STANDARDS GOVERNING CLASS CERTIFICATION

The standard for certifying class actions brought pursuant to F.R.C.P. Rule 23(a) and (b) is set forth in *Duprey v. Conn. Dept. of Motor Vehicles*, 191 F.R.D. 329, 331 (D. Conn. 2000). In ruling on class certification, well-pleaded facts are to be accepted as true. *Id., citing Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177-78 (1974) ("[w]hether a suit should proceed as a class action is a decision made independently of whether a plaintiff has stated a cause of action or whether he can prevail on the merits").

The plaintiff bears the initial burden of demonstrating that all requirements for class certification have been met. *Duprey*, *id*., citing *Guckenberger v. Boston Univ.* 957 F.Supp. 306, 325 (D.Mass. 1997). However, a plaintiff's burden is not a heavy one. *See Piel v. National Semiconductor Corp*., 86 F.R.D. 357, 368 (E.D. Pa. 1980); *Anderson v. City of Albuquerque*, 690 F.2d 796, 799 (10th Cir. 1982); *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562 (8th Cir. 1982). Once a plaintiff makes a preliminary legal showing that the requirements are met, the burden of proof is upon the defendant to demonstrate otherwise. *See* 2 H. Newberg, *Newberg on Class Actions* (3d Ed. 1992) ("Newberg") § 7.22 at 7-74 to 7-75. Provided that a plaintiff's contentions regarding the class issues are based upon a reasonable foundation, the Court should not deny certification because of a defendant's challenge. *See Sollenbarger v. Mountain States Tel. & Tel. Co.,* 121 F.R.D. 417 (D.N.M. 1988); *In re Industrial Gas Antitrust Litig*., 100 F.R.D. 280 (N.D. Ill. 1983); *Kuck v. Berkey Photo, Inc.*, 81 F.R.D. 736 (S.D.N.Y. 1979).

The United States Supreme Court has noted that "[c]lass actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981). The Court has

---

[2] In paragraph 36 of the Complaint, the section is incorrectly referenced as § 36a-785(a).

also recognized that the class action procedure is necessary for private rights of action to be initiated. *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, *reh'g. denied*, 446 U.S. 947 (1980). As stated in *Roper*, class actions serve an important purpose, because they permit plaintiffs to "vindicat[e] the rights of individuals who otherwise might not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost." *Id*. at 338. Similarly, a federal appeals court has stated, in *Esplin v. Hirschi*, 402 F.2d 94, 101 (10th Cir. 1968), *cert. denied,* 394 U.S. 928 (1969), that:

> Without the class action device, many actionable wrongs would go uncorrected and persons affected thereby unrecompensed. In essence, the class action device is a bona fide method for redressing violations of the … laws and for compelling compliance with their mandates. Accordingly, the interests of justice require that in a doubtful case, any error, if there is to be one, should be committed in favor of allowing the class action.

So, too, "the Second Circuit has directed district courts to apply Rule 23 according to a liberal rather than a restrictive interpretation." *See Duprey, id.*, *citing Korn v. Franchard Corp.,* 456 F.2d 1206, 1208-09 (2d Cir. 1972). Thus, this Court should likewise resolve any doubt regarding the propriety of certification "in favor of allowing the class action," so that it will remain an effective vehicle for deterring corporate wrongdoing. *Esplin v. Hirschi*, 402 F.2d at 101; *Welch v. Board of Directors of Wildwood Golf Club*, 146 F.R.D. 131 (W.D. Pa. 1993); *Lessard v. Metropolitan Life Insurance Co.,* 103 F.R.D. 608, 610 (D. Me. 1984); *In re Folding Cartons Antitrust Litigation*, 75 F.R.D. 727 (N.D. Ill. 1977).

As shown below, Plaintiffs satisfy the requirements of Rule 23(a) and (b), and class certification should be granted on the claims asserted in their *Class Action Complaint*.

## II. THE PROPOSED CLASS SATISFIES THE REQUIREMENTS FOR CERTIFICATION.

The proposed class should be certified, because it meets the requirements of numerosity, commonality, typicality, and adequacy, and because the common questions predominate over any individual questions and a class action is superior to other methods to adjudicate the controversy. FRCP 23(a) and (b).

### A. The numerosity requirement is satisfied as Plaintiff reasonably estimates, and WFS has confirmed, that the class and the subclasses consists of at more than forty members, making joinder impracticable.

Numerous federal courts have adopted the standard that a class with at least 40 members is presumably sufficient to satisfy the numerosity requirement, as joinder of a class that large would ordinarily be impracticable. The Second Circuit, referencing the leading class action commentator, adopted this standard in *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993). Citing *Robidoux*, our federal district court has, in *Duprey*, in turn adopted this 40-member standard, explaining that:

> The Second Circuit in *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993), held that a plaintiff need not show the exact size of the putative class in order to satisfy the numerosity requirement, so long as the plaintiff shows some evidence of, or reasonably estimates, the number of class members. The Court noted that a leading treatise had concluded, 'based on prevailing precedent, that the difficulty in joining as few as 40 class members should raise a presumption that joinder is impracticable.' *Id.,* at 936 (*citing* 1 Herbert B. Newberg, *Newberg on Class Actions* § 3.05, at 141-42 (2d ed. 1985)).

*Duprey,* 191 F.R.D. 333.

For the purpose of class certification, well-pleaded facts are to be accepted as true. *Duprey,* 191 F.R.D. at 331, *citing Eisen, supra.* For this reason, "in most cases a class action properly arises prima facie from a well-pleaded complaint, immediately shifting to the party opposing the class the burden to prove otherwise, and leaving the court in any event the duty not

to reach an adverse class determination except if justified 'after a proper appraisal of all the factors enumerated on the act of the Rule itself.'" Newberg, §7:17, citing *Eisenberg v. Gagnon,* 766 F.2d 770 (3d Cir. 1985). "Since Rule 23 is generally required to be liberally construed, these presumptions, arising at an early stage of the litigation, are invoked for the most part in favor of upholding the class." *Id.* Courts in this Circuit liberally construe Rule 23's requirements, and for this reason, it is therefore impracticable for them to be joined in a single proceeding and plaintiffs have accordingly met their minimum threshold of establishing that numerosity exists. *Duprey,* 191 F.R.D. at 331.

Plaintiff alleges that there are forty or more class members (¶21 of the Complaint), and at the time of the filing of the complaint, believed it likely that the class size could exceed hundreds of class members. The parties have subsequently engaged in informal discovery for purposes of advancing their settlement discussions, and those conversations have confirmed that numerosity should not be contested in this case.

### B. There are questions of law or fact common to the class.

"The threshold of 'commonality' is not high." *Flanigan v. General Electric*, 1998 U.S. Dist. LEXIS 22873 (D. Conn. 1998), *citing Jenkins v. Raymark Indus.,* 782 F.2d 468, 472 (5th Cir. 1986). Commonality requires only that "the class claims against [Defendant] arise out of a single set of operative facts, and are based on a single set of legal theories." *Duprey,* 191 F.R.D. at 334; *Macarz v. Transworld Sys.,* 193 F.R.D. 46, 49 (D. Conn. 2000) (commonality met if putative class members' grievances share a common question of law or fact), *citing* 3B Moore's *Federal Practice & Procedure* P 23.06-1 (1996). "Rule 23(a)(2) requires only that questions of law or fact be shared by the prospective class -- it does not require that all questions of law or fact raised be common." *Id., citing Savino v. Computer Credit Corp.*, 173 F.R.D. 346, 352 (E.D.N.Y. 1997); *see also* 1 *Newberg on Class Actions* at § 3.10 (3d ed. 1992).

11

In the present case, Plaintiff alleges that WFS violated the foreclosure provisions of RISFA and the UCC by repossessing and selling the vehicles owned by Plaintiff and the class members and then crediting their accounts with only the net sales proceeds rather than the fair market value. Plaintiff also alleges that, with respect to Subclasses of Class members, WFS further violated RISFA by failing to provide notices within the required time periods regarding the right to reinstate the contracts (Subclass A) and the dates after which the Vehicles could be disposed of by private sale (Subclasses B & C).

WFS's conduct, as alleged above, raises common questions of law regarding whether the notices attached to the Complaint violate RISFA and the UCC. Where a case turns on the alleged existence of common unlawful practices, the commonality requirement is satisfied. *Duprey v. Conn. Dept. of Motor Vehicles*, 191 F.R.D. at 337 (legality of handicap placard fee under disability act was common issue sufficient to show commonality).

Additionally, WFS has moved to dismiss the Complaint and, although that motion was denied without prejudice, it will presumably be revived. The legal questions of whether WFS, as an operating subsidiary of a national bank is subject to RISFA and the UCC are common to all of the class members' claims.

**C. The claims of the representative party is typical of the claims of the class.**

Typicality is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability. *Robidoux,* 987 F.2d at 936. The measure of whether a plaintiff's claims are typical is whether the nature of the plaintiff's claims, judged from both a factual and a legal perspective, are such that in litigating his or her personal claims he or she can reasonably be expected to advance the interest of absent class members. *See, e.g., General Telephone Co. of Southwest v. Falcon*, 457

U.S. 147, 156-157 (1982); *Weiss v. York Hospital*, 745 F.2d 786, 809-810 (3d Cir. 1984), *cert. denied*, 470 U.S. 1060 (1985).

"When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Duprey, supra, citing Robidoux v. Celani*, 987 F.2d at 937; *Carpenters Local 899 v. Phoenix Associates*, 152 F.R.D. 518, 522 (S.D.W.Va. 1994); *Reep v. Barco Auto Leasing Corp., supra, citing Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). Where the class representative alleges a common pattern of wrongdoing and will present the same evidence (based on the same legal theories) to support both his or her claims and the claims of the class members, courts have held the typicality requirement to be satisfied.

In this case, typicality is satisfied, because the Plaintiffs' claims arise out of the same course of conduct, *i.e.*, Defendant's repossession conduct of improperly calculating the deficiency balance, and as to the subclasses, Defendant's failure to provide timely notices.

**D. The representative party and his counsel will fairly and adequately protect the interests of the class.**

Class representatives must fairly and adequately protect the interests of the class. FRCP 23(a). "The adequacy of representation requirement was designed to protect the due process rights of the absent class members, since they will be bound by a judgment in the action." *Duprey,* 191 F.R.D. at 337. The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Freedman v. Value Health, Inc.*, 190 F.R.D. 33 (D. Conn. 1999), *citing Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231, 2250, 138 L. Ed. 2d 689 (1997).

Plaintiff attaches his affidavit to this Memorandum. As he is involved in the litigation and

has no known conflicts with any of the class members, he is adequate to represent the class. *See* Exhibit B. He has retained counsel with substantial experience litigating claims of this type both in class actions and in individual suits. *See* Affidavit of Attorney Daniel S. Blinn attached as Exhibit C. Attorney Blinn has considerable experience representing plaintiffs in class actions. He has served as class counsel in twenty certified class actions, including numerous cases involving auto repossessions under RISFA and the UCC. Accordingly, the requirements of FRCP 23(g)(1) & (4) are satisfied.

**E. Rule 23(b) is satisfied.**

Once the Court has concluded that the four prerequisites for class action certification have been met, it must decide whether the plaintiff has satisfied at least one of the requirements of Rule 23(b). This class action is maintainable under both Rule 23(b)(2) and (3). Rule 23(b)(2) is satisfied, because the Complaint seeks equitable relief in the form of an adjustment to the class members' accounts. At a minimum, WFS failed to credit their accounts with the fair market value of their vehicles, and the class members maintain that they are entitled to that credit. Additionally, Plaintiff maintains that the class and subclass members are not liable for any deficiency. WFS has failed and refuse to make adjustments to their accounts, and the class should therefore be certified under Rule 23(b)(2).

In addition to these equitable claims, which do not require a showing of predominance or superiority in order to be certified, Plaintiff also seeks statutory damages under RISFA and the UCC on behalf of the class and subclass members. That part of Plaintiff's claim should be certified under Rule 23(b)(3), which requires that the Plaintiff show that the common questions of law or fact predominate over any questions affecting only individual members and the class action is superior to other methods of fair and efficient adjudication.

### 1. The predominance requirement is satisfied.

Predominance requires that the common questions predominate over issues that would relate to only individual members. *Duprey,* 191 F.R.D. 339. "When common questions represent a significant aspect of a case so that they can be resolved for all class members in a single suit, predominance exists." *McClendon v. Continental Group, Inc.*, 113 F.R.D. 39, 43-44 (D.N.J. 1986); 7A *Federal Practice and Procedure, supra*, § 1778, pp. 528-29. The predominance requirement is generally satisfied in cases alleging a pattern of consumer fraud. *Amchem Products, Inc. v. Windsor*, 521 U.S. at 625.

"The fundamental question to decide is whether the group aspiring to class status is seeking to remedy a common legal grievance." *Reep v. Barco Auto Leasing Corp.*, 1997 U.S. Dist. LEXIS 22400 (D. Conn. 1997), *quoting Bennett v. Gravelle*, 323 F. Supp. 203, 218 (D. Md. 1971). The court appropriately focuses on the liability issue "and if the liability issue is common to the class, common questions are held to predominate." *Berwecky v. Bear, Stearns & Co.*, 197 F.R.D. 65 (S.D.N.Y. 2000), *citing Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y. 1983); *Dietrich v. Bauer*, 192 F.R.D. 119, 127 (S.D.N.Y. 2000); *Hall v. Midland Group & Midfirst Bank*, 2000 WL 1725238 (E.D. Pa. 2000) (common questions of law and fact predominated because pertinent factual and legal predicates of each class member's claims were virtually identical). Where, as here, a common question is presented as to the legality of WFS's conduct under state law, such common question is controlling in the litigation and, accordingly, predominance is established. *Duprey,* 191 F.R.D. 339. Additionally, the common question of law regarding WFS's federal preemption defense predominates over any individualized questions.

The common question in this case involves Defendant's improper calculation of

deficiency balances, and as to the subclasses, failure to send timely notices. Indeed, the only individual question in this case concern the calculation of damages, which can be accomplished by a ministerial review of Defendant's files. Statutory damages under RISFA, § 36a-785(i) and the UCC, § 42a-9-625(c)(2), are formulaic. Any actual damages would be any amounts actually collected by WFS in excess of the amount of the properly calculated deficiency permitted to be charged. Actual damages for subclass A would also include payments for the actual and reasonable expenses of retaking and storage. This information can be readily ascertained from Defendant's records. In any event, the existence of individual questions of damages is not sufficient to defeat a showing of predominance. *Thrope v. State of Ohio,* 173 F.R.D. 483, 490 (S.D. Ohio 1997).

Consequently, all "non-common" questions can be readily answered by a ministerial examination of Defendant's files, and the common questions regarding the legality of WFS' practices and the class members' entitlement to relief predominate over the readily answered questions that may apply to individual class members.

**2. A class action is superior to other methods for the fair and efficient adjudication of the controversy.**

Rule 23(b)(3) lists factors "pertinent" to the finding that a class action is superior to other available methods for the fair and efficient adjudication of the controversy, which includes:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; C) the desirability or undesirability or concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class action.

In this case, the class members have not shown any interest in individually controlling the prosecution of separate actions; Plaintiff is unaware of any pending litigation concerning this

controversy. This is not unexpected for a class involving relatively small amounts of individual damages. Accordingly, this class action is an ideal forum for these individuals to have their claims adjudicated. *See Thrope,* 173 F.R.D. at 490. "When the entire class is composed of small claimants, neither joinder nor intervention would be a realistic available alternative" and "denial of a class action would effectively exclude them from the judicial redress." *Id.* at 491, citing 1 Newberg (3rd Ed. 1992), § 4.27 at 4-109. Because most of the absent class members are unaware of their claims, this lawsuit would serve to protect their interests. If any Class Members have ascertained the violation, they may be, on an individual basis, unable to take a stand against Defendant's actions due to the relatively small amount of available damages and because of the dearth of attorneys who practice consumer law. A class action would promote judicial economy by preventing other lawsuits, eliminating duplicative efforts by litigants and the judiciary, and preventing duplicative costs and fees. Inconsistent judicial decisions against Defendant would also be avoided.

Various courts have noted the special efficacy of class actions in the consumer law context. *See, e.g., Eshaghi v. Hanley Dawson Cadillac Co.*, 214 Ill. App. 3d 995, 574 N.E.2d 760, 766 (1991) ("[t]he consumer class action, when brought by those who have no other avenue of legal redress, provides restitution to the injured, and deterrence of the wrongdoer"); *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161 (7th Cir. 1974) (court should consider the "inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually"). Here, the Class Members are individual consumers whose vehicles were repossessed. Given the very circumstances that make them class members, it is fair to assume that most of these persons are of modest means and could not afford to litigate their claims individually. As argued above, the claims of these

individuals are relatively small and typically would not justify protracted litigation.

Even if the class members had the knowledge and desire to each bring their own claim, the result would be a "multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake." *See Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968), *cert. denied*, 395 U.S. 977 (1969). By contrast, it would be more desirable to have all of the claims concentrated in a single forum. Rule 23(b)(3)(C).

The final factor in considering predominance and superiority is whether there would be difficulty managing the class. Rule 23(b)(3)(D). To the extent that the size of the class is considered a management difficulty, "[i]t should be kept in mind that management difficulties, other superiority factors, must be judged in comparison to the fairness and efficiency of other available methods for adjudicating the controversy. The only real alternative to a class action in this case is for there to be no adjudication of these claims whatsoever. It is not only the superior means of adjudication, but practically, it is the only means.

## CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that this action be certified as a class action pursuant to Rule 23.

>PLAINTIFF, FRANK D'AGOSTINO, Individually,
>And On Behalf Of The Class,
>
>By:   /s/Daniel S. Blinn_____
>     Daniel S. Blinn, Fed Bar No. ct02188
>     dblinn@consumerlawgroup.com
>     Consumer Law Group, LLC
>     35 Cold Spring Rd., Suite 512
>     Rocky Hill, CT  06067
>     Tel. (860) 571-0408  Fax. (860) 571-7457

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 31st day of March, 2008, a copy of the foregoing Memorandum of Law in Support of Motion for Class Certification was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


                                                ____/s/Daniel S. Blinn_____
                                                Daniel S. Blinn