# UNREPORTED CASES

*Flanigan v. General Electric*, 1998 U.S. Dist. LEXIS 22873 (D. Conn. 1998

LEXSEE 1998 U.S. DIST. LEXIS 22873

William G. Flanigan et al., Plaintiffs, v. General Electric, et al., Defendants.

Civ. No. 3:93cv516 (JBA)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

*1998 U.S. Dist. LEXIS 22873*

September 28, 1998, Decided
September 28, 1998, Filed

**DISPOSITION:**    [*1] Plaintiffs' motion for class certification [doc. # 170] GRANTED.

**COUNSEL:** For WILLIAM G. FLANIGAN, ROGER L. PAPE, DAVID J. OSTERHOUT, MARVIN F. SEDLACEK, ALAN R. SAYDAH, JOSEPH E. LEONE, STEPHEN LOUGHIN, DONALD R. BLOYER, JOSEPH G. MCGUIRE, MELVIN L. GILBERT, plaintiffs: J. Daniel Sagarin, Elias A. Alexiades, Hurwitz & Sagarin, Milford, CT.

For WILLIAM G. FLANIGAN, ROGER L. PAPE, DAVID J. OSTERHOUT, MARVIN F. SEDLACEK, ALAN R. SAYDAH, JOSEPH E. LEONE, STEPHEN LOUGHIN, DONALD R. BLOYER, JOSEPH G. MCGUIRE, MELVIN L. GILBERT, plaintiffs: Jerome Marcus, Berger & Montague, Philadelphia, PA.

For WILLIAM G. FLANIGAN, ROGER L. PAPE, DAVID J. OSTERHOUT, MARVIN F. SEDLACEK, ALAN R. SAYDAH, JOSEPH E. LEONE, STEPHEN LOUGHIN, DONALD R. BLOYER, JOSEPH G. MCGUIRE, MELVIN L. GILBERT, plaintiffs: Jeanne Wrobleski, Joseph C. Kohn, Kohn, Swift & Graf, Philadelphia, PA.

For WILLIAM G. FLANIGAN, ROGER L. PAPE, DAVID J. OSTERHOUT, MARVIN F. SEDLACEK, ALAN R. SAYDAH, JOSEPH E. LEONE, STEPHEN LOUGHIN, DONALD R. BLOYER, JOSEPH G. MCGUIRE, MELVIN L. GILBERT, plaintiffs: Ronald H. Surkin, Disanti, Hamilton & Gallagher, Media, PA.

For WILLIAM G. FLANIGAN, ROGER L. PAPE, DAVID J. OSTERHOUT, MARVIN [*2] F. SEDLACEK, ALAN R. SAYDAH, JOSEPH E. LEONE, STEPHEN LOUGHIN, DONALD R. BLOYER, JOSEPH G. MCGUIRE, MELVIN L. GILBERT, plaintiffs:

Francis J. Robinson, Wolf, Berk, Gains & Liss, Philadelphia, PA.

For WILLIAM G. FLANIGAN, ROGER L. PAPE, DAVID J. OSTERHOUT, MARVIN F. SEDLACEK, ALAN R. SAYDAH, JOSEPH E. LEONE, STEPHEN LOUGHIN, DONALD R. BLOYER, JOSEPH G. MCGUIRE, MELVIN L. GILBERT, plaintiffs: David S. Preminger, Rosen, Preminger & Bloom, New York, NY.

For WILLIAM G. FLANIGAN, ROGER L. PAPE, DAVID J. OSTERHOUT, MARVIN F. SEDLACEK, ALAN R. SAYDAH, JOSEPH E. LEONE, STEPHEN LOUGHIN, DONALD R. BLOYER, JOSEPH G. MCGUIRE, MELVIN L. GILBERT, plaintiffs: J. Dennis Faucher, Miller, Fauchedr, Chertow, Cafferty & Wexler, Philadelphia, PA.

For WILLIAM G. FLANIGAN, ROGER L. PAPE, DAVID J. OSTERHOUT, MARVIN F. SEDLACEK, ALAN R. SAYDAH, JOSEPH E. LEONE, STEPHEN LOUGHIN, DONALD R. BLOYER, JOSEPH G. MCGUIRE, MELVIN L. GILBERT, MARK H. TRZYZEWSKI, STEPHEN J. SMITH, DAVID P. CRANSTON, plaintiffs: Alan M. Sandals, Sandals, Langer & Taylor, Philadelphia, PA.

For US COURT OF APPEALS, notice only: US Court of Appeals, Office of the Clerk, US Courthouse, New York, NY.

For GENERAL ELECTRIC [*3]  CO., defendant: Jeffrey J. Mirman, Levy & Droney, P.C, Farmington, CT.

For GENERAL ELECTRIC CO., DALE F. FREY, MICHAEL J. COSGROVE, JOHN H. MYERS, JOEL R. WILSON, ARTHUR S. BAHR, ALAN M. LEWIS, EUGENE K. BOLTON, DONALD W. TOREY, defen-

1998 U.S. Dist. LEXIS 22873, *

dants: Mark S. Dichter, Morgan, Lewis & Bockius, Philadelphia, PA USA.

For GENERAL ELECTRIC CO., defendant: John S. McGeeney, Patrick W. Shea, Jenifer Magyar Bologna, Paul, Hastings, Janofsky & Walker, Stamford, CT.

For DALE F. FREY, MICHAEL J. COSGROVE, JOHN H. MYERS, JOEL R. WILSON, ARTHUR S. BAHR, ALAN M. LEWIS, EUGENE K. BOLTON, DONALD W. TOREY, defendants: Jennifer Magyar Bologna, Paul, Hastings, Janofsky & Walker, Stamford, CT.

For MARTIN MARIETTA CORP, defendant: Jeffrey J. Mirman, John F. Droney, Jr., Levy & Droney, P.C, Farmington, CT.

For MARTIN MARIETTA CORP, defendant: Paul J. Ondrasik, Steptoe & Johnson, Washington, DC.

For LOCKHEED MARTIN CORP, defendant: Morgan D. Hodgson, Steptoe & Johnson, Washington, DC.

**JUDGES:** Janet Bond Arterton, United States District Judge.

**OPINION BY:** Janet Bond Arterton

**OPINION**

### Ruling on Motion for Class Certification [doc. # 170]

This case, brought pursuant to ERISA, *29 U.S.C. § 1001* [*4] *et seq.*, is now before the Court on plaintiffs' motion for class certification. Defendants oppose certification of both proposed subclasses on the grounds that plaintiffs have not fulfilled the requirements of *Fed. R. Civ. P. 23*.

### Factual Background

On November 23, 1992, GE and Martin announced that they had reached a definitive agreement with respect to the sale of GE's Aerospace division. The Transaction Agreement provided that all GE Aerospace employees as of the closing date of the sale would be transferred to Martin, and would be provided with employee benefit plans that were "substantially similar" to those provided by GE. Retirement benefits would include a defined benefit pension plan, hereinafter referred to as the Successor Plan.

Three counts of the amended complaint survived the motions to dismiss. In Count I, plaintiffs allege that the representations made by GE and Martin concerning the Successor Plan "were vague and incomplete and failed to provide employees with information they needed to

know to determine whether to accept transfer to employment by Martin." Amended Compl., P 48. In so doing, the defendants allegedly breached their fiduciary duty to the plaintiffs.

[*5] In Count Two, the plaintiffs alleged that there was a failure to allocate surplus assets and vest benefits upon partial termination (due to layoffs) of the successor plan.

In Count Three, the plaintiffs claim that prior to the closing of the transaction, the defendants breached their fiduciary duties by investing $ 1,000,000,000 of Plan assets in low-yield Treasury Bills.

The plaintiffs now seek to certify two subclasses. Subclass One would consist of all former employees of GE Aerospace who retired or resigned from GE between the announcement of the GE Aerospace sale and the closing on April 3, 1993. Subclass Two would consist of all employees of GE Aerospace who transferred employment to Martin Marietta and who have been vested or nonvested participants in the Martin Marietta/Lockheed Martin pension plain covering transferred GE Aerospace employees.

The GE defendants and defendant Lockheed Martin together oppose class certification on Counts One and Three. Lockheed Martin alone opposes class certification as to Count Two.

### Legal Standards

In order to maintain a class action, *Fed. R. Civ. P. 23(a)* requires that:

> (1) the class is so numerous that joinder of all members [*6] is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Additionally, one of the following criteria of *Rule 23(b)* must be satisfied:

> (1) the prosecution of separate actions by or against individual members of the class would create a risk of
>
> > (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

1998 U.S. Dist. LEXIS 22873, *

(B) adjudications with respect to in-
dividual members of the class which
would as a practical matter be dispositive
of the interests of the other members not
parties to the adjudications or substan-
tially impair or impede their ability to pro-
tect their interests; or

(2) the party opposing the class has
acted or refused to act on grounds gener-
ally applicable to the class, thereby mak-
ing appropriate final injunctive relief or
corresponding declaratory relief with re-
spect to the class as a whole; or

(3) the court finds that the [*7]  ques-
tions of law or fact common to the mem-
bers of the class predominate over any
questions affecting only individual mem-
bers, and that a class action is superior to
other available methods for the fair and
efficient adjudication of the controversy.

*Rule 23(c)(1)* provides: "as soon as practicable after
the commencement of an action brought as a class ac-
tion, the court shall determine by order whether it is to be
so maintained." This determination is to be made solely
on the allegations of the complaint, which are accepted
as true. The court may not consider the validity of the
plaintiff's claims. *Eisen v. Carlisle & Jacquelin, 417
U.S. 156, 177-78, 40 L. Ed. 2d 732, 94 S. Ct. 2140
(1974); Shelter Realty Corp. v. Allied Maintenance
Corp., 574 F.2d 656, 661 n.15 (2d Cir. 1978).* Although
*Rule 23* is subject to a "liberal rather than a restrictive
interpretation," *Civic Assoc. of the Deaf of New York
City, Inc. v. Giuliani, 915 F. Supp. 622, 632 (S.D.N.Y.
1996),* the court must nonetheless undertake a "'rigorous
analysis' to assure that the requirements of the Rule are
satisfied." Id. (citing *General Telephone Co. of South-
west v. Falcon, 457 U.S. 147, 161, 72 L. Ed. 2d 740, 102
S. Ct. 2364 (1982).* [*8]

The parties do not dispute that the numerosity re-
quirement has been fulfilled for both subclasses, nor do
they dispute that the adequacy requirement has been ful-
filled as to Subclass One and Subclass Two as to Count
Two.

## Subclass One (Count One)

### Commonality and Typicality

*Rule 23(a)(2)* requires that there be "questions of
law or fact common to the class," but the rule does not
require that all the questions of law and fact raised by the
dispute be common. "The interests and claims of the

various plaintiffs need not be identical." *Forbush v. J.C.
Penney Co., Inc., 994 F.2d 1101, 1106 (5th Cir. 1993).*
Moreover, "the threshold of 'commonality' is not high."
*Jenkins v. Raymark Indus., 782 F.2d 468, 472 (5th Cir.
1986).*

Even so, all defendants jointly oppose certification
as to Subclass One on the basis that there is no common-
ality, no typicality, and that the subclass as defined does
not fulfill any one of the criteria of *Rule 23(b)*. On the
issue of commonality, the plaintiffs assert that because a
common course of conduct by a defendant is sufficient to
satisfy the common question requirement, that require-
ment is fulfilled where it [*9]  has been alleged that the
defendants actions constituted a breach of fiduciary duty
as to the whole class. The defendants claim that the
plaintiffs "substantially understate their burden of proof"
on this issue. In addition to a common question, the de-
fendants assert that the plaintiffs must also show that the
issues involved "turn on questions of law applicable in
the same manner to each member of the class." (Mem. of
GE at 16 (quoting *General Telephone Co. of Southwest
v. Falcon, 457 U.S. 147, 155, 72 L. Ed. 2d 740, 102 S.
Ct. 2364 (1982)).*

The defendants contend that the plaintiffs' claim of
misrepresentation/withheld   information   will   require
highly individualized factual inquiries to determine what
information each plaintiff did receive, of what impor-
tance that information or lack of information was to each
individual, and what harm each individual suffered as a
result. Furthermore, the defendants contend that the
Court will have to assess the personal circumstances of
each plaintiff in order to determine whether or not that
individual was forced to resign or retire as a result of the
information given/withheld by the defendants.

Plaintiffs respond that theirs [*10]  is not a claim of
"constructive discharge" as the defendants have charac-
terized it. Rather, they emphasize that they are asserting
a breach of fiduciary duty claim, which according to the
plaintiffs requires 1) the existence of a fiduciary relation-
ship, 2) a misstatement by the fiduciary or a failure to
provide complete and forthright information, 3) knowl-
edge by the fiduciary that the information being provided
or withheld might cause confusion or harm, and 4) re-
sulting harm. The plaintiffs further emphasize that *Rule
23(a)(2)* requires only that some questions of law or fact
be shared; it does not require that all questions of law or
fact need be in common. The questions in common, they
assert, include whether the defendants had the status of
fiduciaries, whether defendant had a duty to communi-
cate complete and accurate information, when the defen-
dants had possession of material information regarding
the benefits, whether defendants knew that their failure
to provide information would cause harm, and whether
any of defendants' communications did in fact convey

complete and accurate information in sufficient time. Moreover, the plaintiffs contend that the communications in question [*11] were all in the form of uniform materials distributed to all employees. The plaintiffs also maintain that the defendants are incorrect in their assertion that separate proof will be required to establish a causal link between defendants' fiduciary breach and any harm suffered by each class member.

The parties agree that the requirements of commonality and typicality "tend to merge." *General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, at 159 n.13, 72 L. Ed. 2d 740, 102 S. Ct. 2364*. (1982). In asserting that commonality is lacking, the defendants also argue that typicality is lacking. Because each of the plaintiffs' claims is highly individualized, the defendants argue, no one plaintiff can be said to be typical of the class such that he or she can advance the interests of the class.

In pressing their lack of commonality and typicality arguments, the defendants in main part rely on the Sixth Circuit case of *Sprague v. General Motors Corp., 133 F.3d 388 (6th Cir. 1998)*, in which a majority of an en banc Sixth Circuit overturned the trial court's class certification. The Sprague case involved allegations by retired employees of General [*12] Motors that GM violated ERISA by denying them "fully paid-up" lifetime health care benefits. In overturning the district court's class certification the Sixth Circuit explained that after the district court's previous decision to allow the retirees to proceed on a bilateral contract theory and an estoppel theory, class-wide treatment was no longer viable. According to the majority, "the premise of the bilateral contract theory was that GM had made an individual 'side deal' with each early retiree. Each putative side deal involved any pertinent document the retiree might have signed . . . as well as any pertinent representations GM might have made to the retiree, whether orally, in writing, or both. . . . Proof that GM had contracted to confer vested benefits on one early retiree would not necessarily prove that GM had made such a contract with a different early retiree." *Id. at 398*. The court posited that the same was true of the estoppel theory: "An estoppel claim requires proof of what statements were made to a particular person, how the person interpreted those statement, and whether the person justifiably relied on the statements to his detriment." Id. Moreover, [*13] the court elaborated, GM's statements to the early retirees were not uniform. Therefore, the class lacked commonality. This lack of commonality also indicated to the court a lack of typicality. Since each claim "depended on each individual's particular interactions with GM -- and these, as we have said, varied from person to person. . . [a] named plaintiff who proved his own claim would not necessarily have proved anybody else's claim." *Id. at 399*.

Four of the judges hearing the case en banc, however, dissented from the majority's conclusion that the class certification was an abuse of discretion. In Judge Lively's dissent, he considered the claims of the early retirees to be "all based on a common contention: that GM created a new condition for them with respect to future health care benefits by entering into new agreements that accorded them vested rights never given to general retirees." *Id. at 407*. Judge Martin, writing for himself and two other judges, agreed with Judge Lively that the majority should not have overturned the class certification. The dissenting judges thought class certification appropriate where "all the members were seeking [*14] exactly the same remedy and doing so under the same legal theories." *Id. at 414*. Analogizing this case to another Sixth Circuit case, the dissenters explained that "With the Bittinger class, there were numerous dates of retirement, various oral representations to members, and some members who had signed releases. Nonetheless, the court found 'that the evidence varies from plaintiff to plaintiff would not affect this basic claim.' The same is true of the Sprague class of early retirees." *Id. at 415* (citing *Bittinger v. Tecumseh Prods. Co., 123 F.3d 877 (6th Cir. 1997))*.

The Court does not find Sprague's reasoning to be squarely applicable here. The Court understands these plaintiffs to be asserting a claim in Count One that in disseminating uniform information materials to all proposed class members, the defendants materially misrepresented certain information or withheld material information despite assurances that sufficient information would be made available such that the defendants breached their fiduciary duties. Understood in these terms, the plaintiffs do present a common threshold issue as to what information was disseminated [*15] by the defendants and whether this information constituted material misrepresentations or material withholding of information.

In *Ballone, 109 F.3d 117*, the Second Circuit explained that "misrepresentations are material if they would induce a reasonable person to rely upon them." *Id. at 122* (emphasis added). The objective materiality test of the "reasonable person" suggests that subjective individual plaintiff inquiry would not be required in considering threshold reliance.

Other courts faced with analogous situations of alleged fiduciary misconduct common to all plaintiffs have reached a similar conclusion and certified the plaintiff class. In *Becher v. Long Island Lighting Co., 164 F.R.D. 144 (E.D.N.Y. 1996)*, the plaintiffs were LILCO employees and Plan participants who at one time withdrew a portion of their contributions from the Plan. As a result of these withdrawals, they were later denied certain benefits to which they believed they were entitled, and

filed suit claiming that the defendants concealed and misrepresented certain consequences of these withdrawals. The district court found that there was commonality and typicality [*16] among the class members. "These causes of action raise common questions of law and fact because the defendants rely on the Plan booklets as a defense to the class members' claims arguing that the participants knew the consequences of their withdrawals." *Id. at 151.* The court elaborated that "the plaintiffs all received documents describing their retirement benefits. They claim that these documents never explained that contribution withdrawals would have a seriously detrimental impact on their future benefits. The 'concealment' of this information allegedly violates ERISA. . ." and therefore class certification was deemed appropriate. *Id. at 151.* The district court also found typicality present in that the "same unlawful conduct was directed at both the named plaintiff and the class" even though there may have been variations in the fact patterns underlying individual claims. Id.

In coming to its conclusion that class certification was appropriate, the *Becher* court cited to two District of Connecticut cases. In *Westman v. Textron, 151 F.R.D. 229 (D.Conn. 1993),* Judge Eginton found that a class could be certified where the defendant [*17] had "mailed to each member of the class three separate letters, which, allegedly, each recipient relied upon when deciding whether and when to retire." *Id. at 230.* Moreover, typicality was present because the class representatives "received the same reduced benefits that all other members will eventually receive. The representatives share the same interest in receiving greater benefits and have suffered the same injury as the class. . . . Additionally, typicality is established because each class member's claim arises from the same course of events -- the letters sent and meetings held between the years 1985 and 1989." *Id. at 231.*

In *Devine v. Combustion Engineering, 760 F. Supp. 989 (D.Conn. 1991),* the plaintiffs had alleged that the defendants broke their promise of free lifetime medical and dental benefits under a Voluntary Separation Incentive Program ("VSIP"). The defendants opposed class certification on the grounds that there was no one written communication that all members of the putative class received and "insofar as plaintiffs purport to rely on oral communications, these are too individualized and variable to be appropriate [*18] for class certification." *Id. at 994.* Judge Cabranes agreed in part with the defendants.

> In order for the court to determine that there are issues "common" to the entire class, it is not sufficient merely to find that every class member received a docu-

ment. If there were one single promise that the court could examine and interpret for the purposes of determining whether or not defendants are liable to plaintiffs under ERISA, then it would be immaterial that defendants made this promise in different documents. But as the record now stands, plaintiffs have failed to show that the same promise was made to every member of the purported class.

*Id. at 995.* Nonetheless, because the defendant had admitted that a certain group of VSIP retirees had received two written communications on which the plaintiffs claimed to have relied, at least that group did qualify for class certification.

To the extent, however, that individual class members engaged in personal ad hoc communications with the defendants intended to concern only their specific situations, on which those individuals relied, that evidence would not constitute material misrepresentations [*19] or withholding of information on which liability to the class could be established.

Inasmuch as the plaintiffs do present a common threshold question as to the common communications from the defendants to the plaintiff class members, the named plaintiffs also fulfill the typicality requirement, as well as the commonality requirement, of *Rule 23(a).*

### Rule 23(b) Requirement

The plaintiffs contend that their class is maintainable under *Rule 23(b)(1)(B), Rule 23(b)(2),* or *Rule 23(b)(3).* The defendants believe that the plaintiffs fail to fulfill any one of these requirements.

Certification under (b)(1) or (b)(2) constitutes a "mandatory class," that is, "the class member may not opt out of the action and pursue separate litigation that might prejudice other class members or the defendant." *Bunnion v. Consolidated Rail Corp., 1998 U.S. Dist. LEXIS 7727,* at *40, 1998 WL 372644, *13 (E.D. Pa. 1998) (quoting 5 James Wm. Moore, *Moore's Federal Practice § 23.40* (1998)). While 23(b)(1)(A) focuses on potential prejudice to the defendants, 23(b)(1)(B) focuses on potential prejudice to the members of the proposed class. *Id. 1998 U.S. Dist. LEXIS 7727,* at *40, at *13.

Under *Rule 23(b)(1)(A),* the "mere fact that the defendant may eventually [*20] be found liable to one member of the putative class but not another does not by itself create a risk of incompatible adjudications." *Westman v. Textron, Inc., 151 F.R.D. at 231* (citing *Abramovitz v. Ahern, 96 F.R.D. 208, 215 (D.Conn. 1982)).* Judge Eginton in *Westman,* however, concluded

that defendant breached its fiduciary duty is a question common to all potential cases and could, if tried in separate actions, result in wholly inconsistent adjudications." Id. *Rule 23(b)(2)*, by contrast, 'is designed for cases in which final injunctive relief is sought rather than monetary damages or, if requested, monetary damages are secondary or ancillary." *Medicare Beneficiaries' Defense v. Empire Blue Cross Blue Shield, 938 F. Supp. 1131, 1146 (E.D.N.Y. 1996)*. Finally, the requirements of *Rule 23(b)(3)* may be met where "common questions predominate, [but] claims of the plaintiffs need not be identical and the necessity of answering individual questions after answering common questions will not prevent a class action." Bunnion, 1998 WL at *15 (citation omitted).

The essence of the defendants' argument is that plaintiffs do not qualify [*21] under *Rule 23(b)(1)*, because even if plaintiffs were to prevail, it would not adversely affect the interests of alleged class members, and conversely, if the plaintiffs lost, it would not impair each individual's right to bring an action based on individualized proof related to the individual claim.

As discussed in the context of the commonality requirement, the plaintiffs have presented a common threshold question the resolution of which in separate actions could both establish incompatible standards of conduct for the defendants, and could be dispositive of the interests of non-parties. Varying adjudications of the issue presented in Count One, whether or not the communications common to all subclass members constituted a breach of fiduciary duty, could leave the defendants faced with differing judicial determinations of standards of conduct in evaluating their future communications with employees.

The defendants further argue that plaintiffs merely seek individual money damages, and where a class seeks individual money damages, certification under (b)(1)(B) and (b)(2) is inappropriate.

Plaintiffs maintain that their request for relief is equitable in nature, and is not a matter [*22] of individual money damages. The relief requested in the First Amended Complaint on Count one includes giving those GE employees who elected to retire, resign, or terminate employment between the announcement of the sale and the closing the "unqualified right to elect to rescind his or her retirement, resignation or termination and to return to active employee status as a transferred employee, with such financial adjustments, including back pay and front pay, as may be appropriate." (First Am. Compl. P 92). This relief appears primarily declaratory and injunctive in nature. The plaintiffs also posit that, conceding for the argument that the relief requested might be a mixture of legal and equitable relief, *Rule 23(b)(2)* certification

would be proper because the declaratory and injunctive aspects of the relief would still constitute an important aspect of the overall relief sought. Finally, although plaintiffs would prefer certification under *Rules 23(b)(1)* or *23(b)(2)*, they still argue that certification is available under *Rule 23(b)(3)* inasmuch as the common question of alleged breach of fiduciary duty predominates.

Inasmuch as the Court finds that the proposed classes meet the requirements [*23] of *Rule 23(b)(1)*, the Court does not need to reach the questions of certification under *Rules 23(b)(2)* and (23(b)(3) at this time.

## Subclass Two as to Count Two

Defendant Lockheed Martin contests class certification for subclass two as to Count Two, the partial termination claim, on the basis that no named plaintiff has standing to pursue this claim. Under *§ 411(d)(3) of the Internal Revenue Code*, certain plans must provide that upon "partial termination . . . the rights of all affected employees to benefits accrued to the date of such . . . partial termination . . . to the extent funded as of such date . . . are nonforfeitable." A "partial termination" may include "under certain circumstances, a large reduction in the workforce, or a sizeable reduction in benefits under the plan." H.R. Rep. No. 807, 93rd Cong., 2d Sess., quoted in *Weil v. Retirement Plan Administrative Comm., 933 F.2d 106, 109 (2d Cir. 1991)*. Treasury regulations define partial termination for tax purposes as follows:

> *General Rule.* Whether or not a partial termination of a qualified plan occurs (and the time of such event) shall be determined by the Commissioner with regard to [*24] all the facts and circumstances in a particular case. Such facts and circumstances include: the exclusion, by reason of a plan amendment or severance by the employer, of a group of employees who have previously been covered by the plan; and plan amendments which adversely affect the rights of employees to vest in benefits under the plan.

*26 C.F.R. § 1.411(d)-2(b)(1)*. The partial termination rule is triggered in these circumstances "to prevent forfeiture of pension benefits that have not yet vested and to prevent a windfall to the employer through a reversion of money on which the employer has paid no federal income taxes." *In re Gulf Pension Litigation, 764 F. Supp. 1149, 1165 (S.D. Tex. 1991)*.

Lockheed Martin suggests that a named plaintiff, in order to have standing, must not yet have been vested and must have been involuntarily terminated in connection with the action allegedly constituting a partial termination of the Trans Ops Plan. The plaintiffs argue that named plaintiff Donald Bloyer is such a person. They specifically allege that Mr. Bloyer was not vested, and contend that he was involuntarily terminated. While the Court agrees that because a partial [*25] termination would cause accrued benefits to vest, any employee who did not work the required minimum number of years to vest in the normal pension plan benefits would have an interest in successfully pursuing this claim, the circumstances surrounding Mr. Bloyer's termination are such as not to be conclusively "involuntary."

Not to be deterred, however, the plaintiffs argue that even if Mr. Bloyer is not a suitable class representative, twelve other named plaintiffs have standing to bring this claim. Although the question has not yet been resolved, the plaintiffs argue that one consequence of a partial termination claim is that surplus plan assets are allocated in favor of plan participants. If this were the case, the plaintiffs argue that all plaintiffs who transferred employment to Martin Marietta, and participate in the Martin Plan, have an interest in pursuing this claim. The Court makes no determination at this time whether the plaintiffs' contention is correct. However, the Court does agree that if the plaintiffs are correct in their assertion that the appropriate remedy for a partial termination is allocation of surplus to the plan, then the twelve named class members who are [*26] current Martin plan members have an interest in Count Two sufficient to create standing to pursue this claim. Under the provisions of *Rule 23(c)(1)*, "An order [for class certification] may be conditional, and may be altered or amended before the decision on the merits." As such, Subclass Two as to Count Two is certified with the understanding that amendment or alteration of the class certification may take place at the time any determination as to the appropriate allocation surplus assets is made.

**Count Three: Conflict of Interest**

Finally, the defendants argue that certification as to Subclass Two with respect to Count Three should be denied because an irreparable class conflict of interest exists. In Count Three, the plaintiffs allege that the defendants breached their fiduciary duty when they invested one billion dollars in low-yield United States Treasury bills during transfer of the assets. The defendants now assert that resolution of this claim

would present the question of whether the GE Pension Plan or the Martin Pension Plan would recover, and thus Subclass One and Subclass Two are distinctly at odds with one another on this point.

The plaintiffs assert [*27] that the defendants misunderstand the factual predicate for this claim. They allege that assets earmarked for the Martin plan, for which all the capital and actual investment earnings were transferred to Martin, were deprived of prudent investing, and thus any recovery should go to the Martin plan because the actual investment income went to the Martin plan.

The state of the record before the Court at this time does not permit resolution, the question of what the appropriate remedy would be in the event of a favorable determination on this count, even apart from the question of who would benefit from any remedy. The defendants, however, have not put forth any persuasive reason why the Martin subclass cannot adequately represent the interests of the entire class in pursuing liability only on this count. Accordingly, the Court provisionally certifies Subclass Two in order to pursue the question of liability only on Count Three. The Court may find it necessary to revisit this question of conflict of interest, pursuant to *Fed. R. Civ. P. 23(c)(1)*, at such time as the question of liability is decided favorably to the plaintiffs.

**Conclusion**

For the foregoing reasons, Subclass One, [*28] defined as all former employees of GE Aerospace who retired or resigned from GE between the announcement of the GE Aerospace sale and the closing on April 3, 1993 is conditionally certified as to Count One. Subclass Two, defined as all employees of GE Aerospace who transferred employment to Martin Marietta and who have been vested or participants in the Martin Marietta/Lockheed Martin pension plain covering transferred GE Aerospace employees, is conditionally certified as to Counts Two and Three.

Plaintiffs' motion for class certification [doc. # 170] is GRANTED.

IT IS SO ORDERED.

**Janet Bond Arterton**

**United States District Judge**

Dated this 28th day of September 1998, at New Haven, Connecticut.

*Reep v. Barco Auto Leasing Corp.*, 1997 U.S. Dist. LEXIS 22400 (D. Conn. 1997)

LEXSEE 1997 U.S. DIST. LEXIS 22400

JANIS REEP, Plaintiff vs. BARCO AUTO LEASING CORP., Defendant

Civ. No. 3:94cv798 (JBA)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

*1997 U.S. Dist. LEXIS 22400*

August 28, 1997, Decided

**DISPOSITION:** [*1] Plaintiff's Amended Motion for Class Certification (Doc. 67) GRANTED.

**COUNSEL:** For plaintiff: Daniel A. Edelman, Cathleen M. Combs, James O. Latturner and Sara E. Lorber, Edelman & Combs, Chicago, Illinois.

For defendant: John R. Daley and Jayant W. Tambe, Jones, Day, Reavis & Pogue, Chicago, Illinois.

**JUDGES:** Janet Bond Arterton, U.S.D.J.

**OPINION BY:** Janet Bond Arterton

**OPINION**

*Ruling on Plaintiff's Amended Motion for Class Certification (Doc. 67)*

This case arises from allegations of oppressive, unfair, and deceptive lease practices against defendant Barco Auto Leasing ("Barco"). According to the Revised Second Amended Complaint, plaintiff contends that defendant

> (i) violated the disclosure requirements of the federal Consumer Leasing Act or Truth in Leasing Act ("CLA") (Count 1), (ii) imposed unreasonable termination charges, in violation of the CLA (Count II) and state law (Count III), (iii) violated the Connecticut Unfair Trade Practices Act (Counts IV-VI), and (iv) violated the CLA by failing to disclose the retention [*2] of interest on security deposits it required from its lessees (Count VII).

Pending before the court is the plaintiff's Amended Motion for Class Certification. Plaintiff requests that the court certify four classes: for purposes of Count I, a class "consisting of all persons who signed Barco lease forms similar to *Appendix A*" [Disclosure Class]; for purposes of Counts II, III, and IV, a "class consisting of all persons who signed Barco lease forms similar to *Appendix A* and who were assessed charges for early termination of the leases" [Early Termination Class]; for purposes of Count V, a "class consisting of all persons who signed Barco lease forms similar to *Appendix A* and who were assessed personal property taxes by Barco" [Property Tax Class]; and for purposes of Counts VII and VIII, a "class consisting of all persons who signed Barco lease forms similar to *Appendix A* and who were assessed a security deposit by Barco" [Security Deposit Class].

**I. General Standards for Class Actions**

*A. Existence of the Class and Adequacy of the Class Definition*

Before the court may consider the criteria for class certification under *Rule 23*, the court [*3] must first establish that a class exists and has been adequately defined. *In Re A.H. Robins Co., Inc., 880 F.2d 709, 728 (4th Cir. 1989); Vietnam Veterans Against the War v. Benecke, 63 F.R.D. 675, 679 (W.D. Mo. 1974)*. Defendant opposes the class certification on the grounds that none of the proposed classes meets this requirement. Whether a class exists and has been adequately defined is a determination of fact that must be "determined on the basis of the circumstances of each case." 7A Charles A. Wright, *et al., Federal Practice and Procedure* § 1760 (2d ed. 1990). This requirement, however, is to be given a liberal construction. *Id.*

Defendant's initial objection to the proposed class definition is that plaintiff fails to "conform her classes to meet the relevant statutes of limitations." Dft.'s Mem. at 27. While "class certification does not preclude a defense based on the statute of limitations as to one or more class members," *Eddleman v. Jefferson County, Kentucky, et*

1997 U.S. Dist. LEXIS 22400, *

*al., 96 F.3d 1448 (6th Cir. 1996),* the defendant is correct that it would more efficient for each class to be defined in such a way as to conform to the relevant statutes of limitations. However, [*4] plaintiff clarifies in her reply brief that the "class period for all CLA claims is one year from the end of the lease and the class period under all CUTPA claims is three years." Plf.'s Reply Mem. at 11 n.20.

Defendant further argues that the so-called "Early Termination Class" [1] is inadequately defined. This class, defendant argues, is inadequate for three reasons: (1) it includes people who signed commercial, rather than consumer, leases, and who cannot maintain an action under the CLA; (2) it includes non-residents of Connecticut who cannot pursue claims under Connecticut law; and (3) some lessees were given an interest credit after negotiating a payment plan with Barco, and therefore were not damaged by Barco's failure to account for the time-value of money in calculating early termination charges.

> 1 The Early Termination Class is the class based on Counts II, III, and IV, and is defined as all persons who signed a Barco lease similar to the one plaintiff signed and who were assessed early termination charges.

[*5] In regard to the consumer versus commercial nature of the leases used by Barco, plaintiff's assertion is that this very controversy -- whether Barco is estopped from denying the consumer nature of its leases, and thus the applicability of the CLA -- is a question of law or fact common to the class. The court agrees with plaintiff's analysis. Plaintiff's complaint contains allegations that Barco fraudulently documented consumer leases as commercial ones specifically to avoid liability under the CLA. The court must take the substantive allegations of the complaint as true for purposes of determination of class certification. *Eisen v. Jacquelin & Carlisle, 417 U.S. 156, 177-78, 40 L. Ed. 2d 732, 94 S. Ct. 2140 (1974).* Additionally, if the court finds that the practice which the plaintiff challenges is found to be "a practice of general applicability, then it necessarily affects the entire plaintiff class." *Phelps v. Harris, 86 F.R.D. 506, 512 (D. Conn. 1980).* If the plaintiffs ultimately prevail, the practice of routinely using "commercial" leases will be established as fraudulent as applied to all similarly situated individuals. *Id.*

Next, Barco maintains that the proposed [*6] Early Termination class includes people not resident in Connecticut, and thus who have no standing to sue under CUTPA. Plaintiff remedies this in her reply brief by limiting the classes under the CUTPA claims to persons who reside or leased their vehicle in Connecticut.

Defendant's last contention in regard to the Early Termination class is that the definition inappropriately includes some lessees who were given an interest credit as part of a negotiated payment plan with Barco. As a preliminary matter, the court must once again accept as true the allegation in plaintiff's complaint that the termination charges are unreasonable. *Eisen v. Jacquelin & Carlisle, 417 U.S. at 177-78.* Taking that as true, plaintiff maintains that all lessees suffer damage in that they remain legally liable for the full termination charges without adjustment of the residual value of the vehicle, regardless of whether Barco gives an interest credit. The court agrees with plaintiff on this issue. Whether or not Barco can amicably come to agreement with some lessees who terminate early, Barco always retains the right to assess the full termination charges if any legal action is taken against any lessee. [*7] Barco's argument is essentially that because they choose not to exercise certain parts of the lease agreement against certain lessees, the legality of the lease agreement in regard to those lessees cannot be at issue. This is a fallacy. It may be that the very provisions of the lease agreement in contention are what drive some lessees who terminate early to work out payment settlements with Barco. In other words, Barco uses the lease agreement as both a carrot and a stick in dealing with lessees who terminate early, but all lessees remain liable for the termination charges in the agreement. In this regard, all class members face the possibility of being assessed the full termination charges, and thus are appropriately included within the definition of the class.

Defendant also takes issue with the proposed definitions of the "Property Tax" and "Security Deposit" classes. [2] In the first place, defendant argues that members of the Property Tax class may not have standing under the Connecticut Unfair Trade Practices Act ("CUTPA"), as the showing of causation is missing. While it is true that "certification of a class with no members entitled to pursue the substantive claims at issue [*8] would be pointless and improper," Dft.'s Mem. at 31, such is not the case here. Plaintiff's claim is that defendant's leases fail to state the full amount of property taxes to be assessed. The fact that the state, and not Barco, assesses those taxes does not figure into the analysis, as plaintiff's claim depends upon the failure to disclose the full tax amount, not the source of taxes.

> 2 The proposed Property Tax Class is defined as all people who signed a Barco lease similar to the one plaintiff signed, and who were billed for state-imposed personal property taxes by Barco. The proposed Security Deposit Class is defined as all people who signed a lease similar to the one plaintiff signed, and who made a security deposit on the leased vehicle.

Defendant's objections to the definition of the Security Deposit class are similarly unavailing. The defendant again raises the issue that the class definition may include commercial lessees. The court's discussion above has similar applicability here. Secondly, the defendant [*9] contends that, as a matter of fact, that Barco earned no interest on the security deposits. The court, however, must take the allegations contained in the complaint as true for the purposes of class certification. *Eisen v. Jacquelin & Carlisle, 417 U.S. at 177-78.* It would therefore be inappropriate to consider at this time whether or not Barco, in fact, earns interest on the security deposits.

### B. Rule 23(a) Criteria

As a preliminary matter, *Federal Rule of Civil Procedure 23(a)* provides that a proposed class may be maintained only if:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defense of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Furthermore, *Rule 23(c)(1)* provides: "as soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." This determination is to be made solely on the allegations of the complaint, which are accepted [*10] as true. The court may not consider the validity of the plaintiff's claims. *Eisen v. Jacquelin & Carlisle, 417 U.S. 156, 177-78, 40 L. Ed. 2d 732, 94 S. Ct. 2140 (1974); Shelter Realty Corp. v. Allied Maintenance Corp., 574 F.2d 656, 661 n.15 (2d Cir. 1978).* Although *Rule 23* is subject to a "liberal rather than a restrictive interpretation," *Civic Assoc. of the Deaf of New York City, Inc. v. Giuliani, 915 F. Supp. 622, 632 (S.D.N.Y. 1996),* the court must nonetheless undertake a "'rigorous analysis' to assure that the requirements of the Rule are satisfied." *Id. (citing General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 161, 72 L. Ed. 2d 740, 102 S. Ct. 2364 (1982).*

#### 1. Numerosity

That the proposed classes are so numerous that joinder of all members is impractical is not in dispute. Defendant has admitted that the lease form at issue is a standard printed form that has been used in transactions "with thousands of people in at least 27 different states and the District of Columbia." Dec. of Denise B. Pavlides, Esq., App. B of Plf's Mem. Moreover, there are no bright line rules for determining when joinder becomes impracticable. *Garcia v. Gloor, 609* [*11] *F.2d 156, 160 (5th Cir. 1980).* Rather, the court may "make common sense assumptions in order to find support for numerosity." *Patrykus v. Gomilla, 121 F.R.D. 357, 360 (N.D. Ill. 1988).*

#### 2. Commonality

While *Rule 23(a)(2)* requires that there be "questions of law or fact common to the class," the rule does not require that all the questions of law and fact raised by the dispute be common. "The interests and claims of the various plaintiffs need not be identical." *Forbush v. J.C. Penney Co., Inc., 994 F.2d 1101, 1106 (5th Cir. 1993).* Moreover, "the threshold of 'commonality' is not high." *Jenkins v. Raymark Indus., 782 F.2d 468, 472 (5th Cir. 1986).*

Plaintiff meets this standard. The proposed classes consist of people who have signed leases similar to the one plaintiff signed. Counts I, II, III, IV, V, VII, and VIII all relate to the legal adequacy of this lease. None of these counts requires individual reliance on the lease in order for a violation to exist. Therefore, factual inquiries into individual reliance are not necessary to prove commonality. These questions are common to all people who signed similar leases. *See Sarafin v. Sears, Roebuck & Co. 73 F.R.D.* [*12] *585 (N.D.Ill. 1977)* (all persons who participated in a credit plan were deemed to have been affected by common questions of law or fact because the monthly statements must conform to the standards of the Truth in Lending Act).

#### 3. Typicality

The plaintiff must further establish that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." *Fed. R. Civ. P. 23(a)(3).* "*Rule 23(a)(3)* assures that the claims of the representative party are similar enough to the claims of the class so that he will adequately represent them." 7A Charles A. Wright, *et. al, Federal Practice and Procedure § 1764(2d ed. 1990).* "Typicality, however, does not require identical claims or defenses. A factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class." *Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984).*

Defendant contends that "plaintiff's claims are manifestly atypical of those she seeks to represent." Dft.'s Mem. at 32. Barco bases this statement on three arguments. First, that plaintiff's interests [*13] do not align with those lessees who terminated early, but worked out a payment plan with Barco that included an interest credit. Second, that plaintiff's understanding of her lease

derives from oral representations, making her atypical of those lessees who read their leases. Third, and finally, that plaintiff is atypical in that she will be subject to a counterclaim. None of these arguments, however, holds up under scrutiny.

As to the first argument that some lessees are given an interest credit as part of a negotiated payment plan with Barco, this issue is discussed above in the analysis of defendant's claims that the class definition is inadequate. The same analysis holds true for the argument that plaintiff is atypical. Plaintiff is typical of all class members as all class members face the possibility of being assessed the full termination charges, even if they can negotiate a payment agreement with defendant.

Defendant's second argument -- that plaintiff is atypical because she did not read her lease -- is similarly fallacious. Plaintiff's allegations are that defendant's lease practices are legally inadequate independent of a lessee's subjective understanding of the lease. [*14] The contentions in plaintiff's complaint do not depend upon the class members' understanding or even reading of the lease. They stand, or fall, entirely on the language of the lease agreement and the leasing practices of the defendant.

Lastly, defendant contends that plaintiff is atypical because she is subject to a significant counterclaim. "Differences in the amount of damages between the class representative and other class members," however, "does not affect typicality." *Kornberg, 741 F.2d at 1337.*

Furthermore, defendant relies on the case of *McKernan v. United Technologies Corp., 120 F.R.D. 452 (D. Conn. 1988)* to support the argument that a counterclaim will render plaintiff unable to protect the interest of the class. That case, however, involved plaintiffs whose different factual situation made it unlikely that they could pursue the legal theories that would most benefit their fellow class members. Defendant has not offered any evidence, other than a plain assertion that "plaintiff is likely to focus her energies on defending against liability," [3] that this is the case here. The counterclaim against plaintiff arises from the same transaction that underlies plaintiff's [*15] suit. There is nothing on the face of the counterclaim that would suggest that plaintiff will pursue legal theories that would benefit herself at the expense of her fellow class members. Nor is there any evidence that the counterclaim will actually prevent plaintiff from pursuing legal theories that benefit her fellow class members, as was the case in *McKernan*. The claims or defenses of the representative party, therefore, are deemed typical of the claims or defenses of the class.

3  Plaintiff's counsel highlights in her reply memorandum that plaintiff specifically contra-

dicted this assertion in a deposition. Plf.'s Reply Mem. at 14.

*4. Adequacy of Representation*

The last requirement of *Rule 23(a)* is that the "representative parties will fairly and adequately protect the interests of the class." *Fed. R. Civ. P. 23(a)(4)*. In addressing the above issue of plaintiff's typicality, defendant also seems to make the argument that plaintiff's potential liability for the counterclaim would make her unable to [*16] fairly and adequately represent the interests of the class. However, as indicated in the above section, the court has been presented with no evidence that plaintiff must necessarily pursue her interests above those of the class, or even that she is inclined to do so.

## II. Secondary Class Action Standards

In addition to the preliminary requirements of *Rule 23(a)*, the party seeking class certification must satisfy one of the alternative requirements of *Rule 23(b)*. Plaintiff seeks certification of the four classes under *Rule 23(b)(3)* with respect to Counts I, II, III, IV, VI, and VIII, and alternatively seeks certification under *Rule 23(b)(2)* for Counts III, IV and VII. Before a class may be certified pursuant to *Rule 23(b)(2)*, it must be shown that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." *Fed. R. Civ. P. 23(b)(2)*. A class may be certified pursuant to *Rule 23(b)(3)* if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting [*17] only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Fed. R. Civ. P. 23(b)(3)*.

Defendant opposes certification of all proposed classes on the following two grounds: (1) *Rule 23(b)(3)*'s predominance requirement is not met; and (2) Counts III, IV, and VII do not meet the *Rule 23(b)(2)* requirement that the primary relief sought be injunctive or declaratory.

### A. Predominance Requirement of Rule 23(b)(3)

"The fundamental question to decide is whether the group aspiring to class status is seeking to remedy a common legal grievance." *Bennett v. Gravelle, 323 F. Supp. 203, 218 (D. Md. 1971)*. Defendant maintains that the claims pursuant to the CLA will involve a highly-individualized, detailed, and transaction-specific inquiry into whether or not each class member suffered actual harm from the termination penalty. However, if the issue of statutory liability is common to all class members, the

fact that individual reliance or damages may vary "does not require that the class action be terminated as being beyond the scope of *Rule 23(b)(3)*." 7A Charles A. Wright, *et al., Federal Practice* [*18] *& Procedure* § 1778 (2d ed. 1990). The inquiry as to whether or not failure to adjust for the time value of money makes the termination charge unreasonable will remain a common question. While the amount of damages may differ for each individual class member, the overall alleged failure to discount to present value is a common question. *See Roper v. Consurve, 578 F.2d 1106 (5th Cir. 1978); Fetta v. Sears, Roebuck & Co., Inc., 77 F.R.D. 411 (D. R.I. 1977).* [4]

> 4  The court finds defendant's argument that the court "must apply the law of each jurisdiction where charges were assessed," Dft.'s Mem. at 14, in order to determine reasonableness to be quite curious. The relevant statutory provision in determining the reasonableness of the termination charge is a federal law, and therefore is applicable in all states.

Defendant further objects to certification of the classes that pertain to the CUTPA, contending that any liability under the CUTPA must be based on circumstances [*19] of a particular case. As with the CLA, above, however, the determination of whether failure to adjust future payments to present value constitutes an unreasonable termination charge is nonetheless a question common to all class members. It is only the level of damages that would require individual assessment.

Defendant further argues that all class members who seek damages must prove causation, and this will require individualized inquiries that preclude plaintiff's proceeding on a class basis. The court finds plaintiff's response that these damages can be calculated based upon uniform formulas persuasive. Many courts have allowed class actions to go forward despite the fact that damages assessments would differ. *See, e.g., Sanchez v. Lowell Lebermann, Inc., 79 F.R.D. 21 (D. Tex. 1978).* Moreover, where these assessments can be made according to uniform formulas, there need be no individualized inquiry.

*B. Rule 23(b)(2) as an Alternative Basis for Class Certification*

The court need not consider *Rule 23(b)(2)* as an alternative basis for class certification as *Rule 23(b)(3)* has been deemed an adequate basis.

**III. Conclusion**

As all [*20] of the requirements of *Fed. R. Civ. P. 23* have been met, Plaintiff's Amended Motion for Class Certification (Doc. 67) is GRANTED. The parties are directed to submit a proposed order of class certification reflecting the definitions and subparts of the four classes in accordance with this ruling by September 12, 1997. Status reports by the parties shall also be filed by September 12, 1997.

IT IS SO ORDERED.

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this *28th* day of August, 1997.

*Hall v. Midland Group & Midfirst Bank*, 2000 WL 1725238 (E.D. Pa. 2000)

1 of 2 DOCUMENTS

**GARY B. HALL, INDIVIDUALLY, AND AS REPRESENTATION OF A CLASS v. MIDLAND GROUP AND MIDFIRST BANK a/k/a MIDLAND MORTGAGE COMPANY SSB**

CIVIL ACTION NO. 99-3108

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

*2000 U.S. Dist. LEXIS 16751*

**November 17, 2000, Decided**
**November 20, 2000, Filed**

**DISPOSITION:**   [*1] Motion GRANTED.

**COUNSEL:** For GARY B. HALL, INDIVIDUALLY, AND AS REPRESENTATIVES OF A CLASS, PLAINTIFF: CAROL B. MC CULLOUGH, MC CULLOUGH LAW OFFICES, P.C., WARMINSTER, PA USA. STUART A. EISENBERG, MCCULLOUGH & EISENBERG, P.C., WARMINSTER, PA USA.

For MIDLAND GROUP, MIDFIRST BANK, A/K/A MIDLAND MORTGAGE COMPANY SSB, DEFENDANTS: ROBERT J. PRATTE, ALAN H. MACLIN, MARGARET K. SAVAGE, BRIGGS & MORGAN, MINNEAPOLIS, MN USA. MARTIN C. BRYCE, JR., BURT M. RUBLIN, BALLARD, SPAHR, ANDREWS AND INGERSOLL, PHILA, PA USA.

DENNIS J. SABREE, RESPONDENT, Pro se, Inkster, MI.

DOLORES A. SABREE, RESPONDENT, Pro se, Inkster, MI.

MICHAEL D. DONOVAN, MOVANT: MICHAEL D. DONOVAN, DONOVAN MILLER, LLC, PHILADELPHIA, PA USA. JOHN C. BELL, JR., BELL & JAMES, AUGUSTA, GA USA. THOMAS W. TUCKER, JOHN B. LONG, DYE, TUCKER, EVERETT, LONG & BEWTON, AUGUSTA, GA USA. PAMELA S. JAMES, BELL & JAMES, AUGUSTA, GA USA.

For THRUBERT E. BAKER, OBJECTOR: SIDNEY R. BARRETT, JR., OFFICE OF THE ATTORNEY GENERAL, ASSISTANT ATTORNEY GENERAL, ATLANTA, GA USA.

For SHAKIRA LEMON, OBJECTOR: MICHAEL D. DONOVAN, DONOVAN MILLER, LLC, PHILADELPHIA, PA USA.

For MIKE MOORE, OBJECTOR: LEYSER Q. HAYES, ASSISTANT [*2] ATTORNEY GENERAL, OFFICE OF ATTORNEY GENERAL, JACKSON, MS USA.

For ELIZA KIRKLAND, OBJECTOR: MICHAEL D. DONOVAN, DONOVAN MILLER, LLC, PHILADELPHIA, PA USA. JOHN C. BELL, JR., BELL & JAMES, AUGUSTA, GA USA.

**JUDGES:** JAY C. WALDMAN, J.

**OPINION BY:** JAY C. WALDMAN

**OPINION**

*MEMORANDUM*

**WALDMAN, J.**

**November 17, 2000**

*Background*

This is a consumer class action. The essence of plaintiff's allegations is that defendant Midland engaged in the forced placement of hazard insurance through agencies owned by affiliates for residential properties with mortgages serviced by Midland and debited the affected mortgagors' escrow accounts in the amount of excessive and unauthorized premiums charged by the affiliates which received commissions for these placements.

Case 3:07-cv-00161-CFD   Document 42-2   Filed 03/31/08   Page 18 of 24

Page 2
2000 U.S. Dist. LEXIS 16751, *

Plaintiff has asserted an array of claims including breach of contract, breach of a duty of good faith and fair dealing, fraud, unfair trade practices, and violations of the federal Fair Debt Collection Practices Act and the civil RICO statute. Each claim, however, is predicated on the alleged impropriety of the challenged practice. The court has subject matter jurisdiction pursuant to *28 U.S.C. §§ 1331* [*3] & *1367(a)*.

The proposed class consists of those mortgagors for whom Midland force placed such insurance over the past twenty years. The class is divided into three subclasses reflecting the time periods in which the insurance was obtained and the pendency or non-pendency of premium assessments, as some policies were flat-cancelled.

Subclass I includes class members for whom lender placed insurance was obtained between February 1, 1991 and September 30, 1999 who, as of September 30, 1999, had a net lender placed premium assessment. Subclass II includes class members for whom lender placed insurance was obtained between February 1, 1991 and September 30, 1999 whose insurance was canceled and who, as of September 30, 1999, had no net lender placed premium assessment. Subclass III consists of class members for whom lender placed insurance was obtained between June 17, 1979 and January 31, 1991.

The court granted plaintiff's motion for provisional certification of a settlement class pursuant to *Fed. R. Civ. P. 23(a)* & *23(b)(3)* and for preliminary approval of the settlement agreement executed by the parties. Presently before the court are plaintiff's Motion for Final Approval of Settlement [*4] and Certification of Settlement Class and plaintiff's Motion for Attorney Fees and Costs which includes a request for an incentive award to the representative plaintiff.

The court held a hearing on final certification and approval, and has considered the voluminous submissions of the parties presented in connection with that hearing. The court has also considered the seven objections, four of which were presented or solicited by counsel for plaintiffs in an overlapping class action filed in the Southern District of Georgia captioned *Kirkland v. Midland Mortgage Company*. All parties who appeared were afforded an opportunity to make a full presentation.

The objections were directed at the adequacy of notice, the adequacy of the relief and the adequacy of representation. In a manner reminiscent of a political campaign, the *Kirkland* objectors have questioned the professional and personal integrity of class counsel in *Hall*. The court will address the various objections in connection with its discussion of the pertinent factors to which they relate.

*Adequacy of Notice*

Notice was provided by mail to all class members who could be located from records available [*5] to Midland and the issuing insurer as well as databases utilized by a national direct mail firm engaged by Midland, and by publication in USA Today plus seven metropolitan newspapers in various regions and Midland's principal markets. The record shows that ultimately 37,557 of 43,211 class members were reached by mail.

The notice contained the pertinent details about the action necessary to allow class members to make an informed decision, including the information contemplated by *Fed. R. Civ. P. 23(c)(2)*. The notice did not, as the *Kirkland* objectors stress, discuss the pendency of the *Kirkland* case. Indeed, they contend that counsel in *Hall* breached a "duty of candor" in failing to advise the court prior to approval of notice about the *Kirkland* case and that a class had been certified therein.

Counsel did in fact advise the court about the pendency of *Kirkland* as reflected in the court's memorandum order addressing the motion for preliminary approval. Counsel did not advise the court that a motion for class certification had been granted in that case and it is not altogether clear that it had been.

It appears that the Court in Georgia did hold a hearing on [*6] a motion for class certification in *Kirkland* and seemed to conclude that certification would be appropriate at least on a single claim of breach of fiduciary duty under Oklahoma law, the state of Midland's incorporation and principal place of business. The Court in *Kirkland* stated that "I intend to certify," that a class "will be certified" and that "I expect" to certify a class after reviewing proposed orders to be submitted by the parties.

The Court, however, did not enter an order detailing its *Rule 23* findings and certifying the *Kirkland* class for another fifteen months, by which time the *Hall* settlement had received preliminary approval. It appears that in the interim the *Kirkland* case had been placed in suspense while the parties engaged in settlement negotiations.

In any event, the pendency of a parallel or overlapping class action does not preclude certification and adjudication of a subsequent class action. *See Blair v. Equifax Check Services, Inc., 181 F.3d 832, 838 (7th Cir. 1999).* [1] Class notice of a proposed settlement need not describe parallel actions. *See Bell Atlantic Corp. v. Bolger, 2 F.3d 1304, 1317-18 (3d Cir. 1993).* [*7] [2]

> 1  *Kirkland* counsel suggests that litigation of the instant case may be precluded by the first-filed rule. *Hall* and *Kirkland* are not co-extensive. They do not involve the same parties and same issues. Mr. Hall is not a member of the *Kirkland* class. The claims in *Hall* are broader and the

class more inclusive than in *Kirkland*. Class counsel in *Kirkland* sought an order from the Court in Georgia enjoining Midland from settling the *Hall* action which that Court declined to issue.

2   *Kirkland* counsel has suggested that because settlement of *Hall* would effectively resolve claims of *Kirkland* class members, such a settlement must be approved by the Court in Georgia to comport with *Rule 23(e)*. Under this reasoning, none of scores of overlapping class actions often spawned by allegedly defective products or widespread fraudulent practices could be settled without the approval of the presiding judge in each. In short, *Rule 23(c)* requires only that any settlement of the *Hall* action be approved by the court in *Hall*.

[*8] *Kirkland* counsel also objected to the fact that the final postmark date for respondents was a Sunday, a day on which he suggests a letter cannot be postmarked. In fact, letters are postmarked on Sundays at main post offices in Philadelphia and other large cities. In any event, it is uncontroverted that any letter postmarked on the following day was accepted by counsel. [3]

3   *Kirkland* counsel also questioned the use of claim forms and the provision for reversion of unclaimed funds which creates a potential counter-incentive to distribution. In a class of this size, the use of such forms is not unusual or inappropriate. *See Manual for Complex Litigation, Third* § 30.47. The reversionary provision has been eliminated by stipulation of the parties.

The court concludes that class members were provided with the best notice practicable under the circumstances and the notice provided, as to mode and content, satisfied *Rule 23(c)(2)* and the requirements of due process. *See*, e.g., *Lake v. First Nationwide Bank, 156 F.R.D. 615, 628 (E.D. Pa. 1994)*; [*9] *Carlough v. Amchem Prod., 158 F.R.D. 314, 325 (E.D. Pa. 1993)*; *Sanders v. Robinson Humphrey/American Express, Inc., 1990 U.S. Dist. LEXIS 11492, 1990 WL 105894, *3 (N.D. Ga. May 23, 1990)*.

### Class Certification

*Rule 23(a)* requires that a class satisfy the criteria of numerosity, commonality, typicality and adequacy of representation.

Numerosity is satisfied when the class is so numerous that joinder of all class members is impracticable. *See In re Prudential Ins Co. of America Sales Lit., 148 F.3d 283, 309 (3d Cir. 1998)*. Joinder of each of the tens of thousands of class members would be impracticable.

*See Weiss v. York Hosp., 745 F.2d 786, 809 n.35 (3d Cir. 1984)* (numbers exceeding one hundred will generally sustain numerosity requirement), *cert. denied, 470 U.S. 1060, 84 L. Ed. 2d 836, 105 S. Ct. 1777 (1985)*.

Commonality is satisfied when there are questions of law or fact common to the class but does not require an identity of claims or a lack of "factual differences among the claims of the putative class members." *In re Prudential, 148 F.3d at 310*. The alleged existence of a common unlawful practice [*10] generally satisfies the commonality requirement. *See Anderson v. Dep't. of Public Welfare, 1 F. Supp. 2d 456, 461 (E.D. Pa. 1998)*. There are common questions of fact and law as the suit challenges a common practice and the same legal standards govern each class member's claims.

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *See Georgine v. Amchem Products, Inc., 83 F.3d 610, 631 (3d Cir. 1996)*. The claims of the representative plaintiff are typical as they and the claims of each class member are advanced under the same legal theories and arise from the same practice or course of conduct. *See Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 923 (3d Cir. 1992)*.

Adequacy of representation requires that the interests of the named plaintiffs are aligned with those of the absentees and that the class counsel is qualified and generally able to conduct the litigation in the interest of the class. *See Georgine, 83 F.3d at 630*. There is no apparent conflict of interests between the representative plaintiff and other class members. [4] Class [*11] counsel appear to have the experience and skill ably to represent the proposed class.

4   *Kirkland* counsel has suggested that separate representation may be appropriate for subclass II, those who were flat-cancelled and whose damages consist of loss of the use of funds. Interestingly, no suggestion of a need for separate representation for *Kirkland* class members who were flat-cancelled was made by counsel in *Kirkland*. In any event, the interests of all class members appear to be harmonious. It is entirely reasonable that those who lost more money may receive more under the settlement formula.

Mr. Eisenberg has been counsel in ten class actions involving the mortgage or banking industry, five of which involved force placed insurance. He has considerable experience representing both creditors and debtors in bankruptcy and consumer litigation. Co-class counsel Carol McCullough has experience representing both creditors and debtors in litigation, and served as counsel

for a large class in a prior successful [*12] case against a substantial mortgagee involving force placed insurance.

The character and ethics of class counsel may conceivably bear on the adequacy of representation. *See Kingsepp v. Wesleyan University, 1992 U.S. Dist. LEXIS 13399, 1992 WL 230136,* *1-2 (S.D.N.Y. Sept. 3, 1992); *Stavrides v. Mellon Nat'l. Bank & Trust Co., 60 F.R.D. 634, 636-37 (W.D. Pa. 1973).* One, however, should not lightly impugn the integrity or professional ethics of another.

*Kirkland* counsel charged collusion by class counsel in this case with defendant Midland. That charge was predicated on assumptions which have been unsupported and flatly contradicted by the sworn statements of those with knowledge. *Kirkland* counsel also cites to the imposition on Mr. Eisenberg of a $ 250 sanction by a bankruptcy court in 1989 for making an insupportable Chapter 13 filing and to a reference by the same court in a subsequent opinion to the failure of Mr. Eisenberg to make required filings in another 1989 bankruptcy case.

*Kirkland* counsel stresses that Mr. Eisenberg was disbarred between 1990 and 1998. That disbarment was upon consent and was occasioned by an impairment which admittedly affected his ability [*13] to function as an attorney. That impairment contributed to the noted failures in 1989. Mr. Eisenberg overcame his impairment and was reinstated to practice after an investigation by state bar authorities and upon a finding of fitness. He was not found fit to represent only certain clients in particular kinds of cases. He was found fit to practice. To accept that the disbarment is disqualifying is to give at most limited recognition to the reinstatement. There has been no showing of any conduct by Mr. Eisenberg in the two and a half years he has been reinstated to suggest he is not fit to conduct this litigation.

*Kirkland* counsel has also questioned Mr. Eisenberg's adequacy because of "suits against former clients and business associates" and a prior personal bankruptcy. The referenced suit against a former client was one for payment for services rendered in which the Court held that Mr. Eisenberg had presented a viable claim. In the suit against his former partners, Mr. Eisenberg alleged that money to which he was entitled had been converted or misappropriated. The Court in that case dismissed his RICO claim after finding the two predicate acts did not constitute a "pattern" of [*14] racketeering and otherwise simply declined to exercise supplemental jurisdiction over the related state law claims. The suits suggest nothing disqualifying about Mr. Eisenberg's character. Neither does the fact he found himself in a position almost ten years ago that resulted in personal bankruptcy.

*Rule 23(b)(3)* sets forth the additional requirements of predominance and superiority. Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623, 138 L. Ed. 2d 689, 117 S. Ct. 2231 (1997).* The predominance requirement is generally satisfied in cases alleging a pattern of consumer fraud. *Id. at 625.* This suit which challenges the use of virtually identical methods employed with regard to each class member falls into such a category. Common questions of law and fact predominate because the pertinent factual and legal predicates of each class member's claims are virtually identical.

"The superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods [*15] of adjudication." *In re Prudential Ins., 148 F.3d 283, 316* (quotations omitted). Any interest of members of the class in individually controlling the prosecution of separate actions, *see Rule 23(b)(3)(A),* is significantly outweighed by the efficiency of the class mechanism given the size of the class and the relatively modest size of each individual damage claim. *See id.* (modest size of individual claims suggests class procedure is superior).

This district appears to be as appropriate a forum as any in which to concentrate the claims presented in this case. *See Rule 23(b)(3)(C).* Potential management problems at trial need not be considered because this is a settlement class. *See Amchem Products, 521 U.S. at 620.* Moreover, no such problems are apparent.

The court concludes that the requested class certification is appropriate.

### Settlement Approval

The touchstone for approval of a class action settlement is whether it is fair, adequate and reasonable under the circumstances. *Eichenholtz v. Brennan, 52 F.3d 478, 482 (3d Cir. 1995).* This determination is guided by several pertinent considerations -- the so-called [*16] Girsh factors. *See Girsh v. Jepson, 521 F.2d 153, 156 (3d Cir. 1975).*

The court first considers the complexity, expense and duration of any litigation. The litigation of this action to conclusion would entail substantial time, effort and expense including the presentation of motions involving novel and complex issues, enormous preparation and utilization of various expert witnesses.

The court next considers the reaction of the class. Of tens of thousands of class members, twenty-one have opted out and six have objected. Nancy Cronin stated she does not believe the amount of the settlement is suffi-

cient to compensate for the effort and frustration of having to deal with Midland personnel. Ricky Brown also expressed frustration in dealing with Midland and believes the settlement is deficient because it does not require Midland to effect internal administrative and procedural changes to improve its performance. Dennis and Dolores Sabree jointly filed an objection relating to matters not encompassed by the lawsuit. They contend that Midland unfairly reported them as delinquent and began foreclosure proceedings for failure to make installment mortgage payments, and then [*17] failed to cooperate with HUD in an inquiry triggered by the mortgagors' call to a HUD hotline. As noted, counsel for the *Kirkland* class filed objections on behalf of Eliza Kirkland and another class member Shakira Lemon. [5]

> 5   Objections were also filed by the Attorneys General of Georgia and Mississippi, the latter consisting of a single sentence joining in the objections of the Georgia Attorney General. It was acknowledged at the hearing that those objections were solicited by *Kirkland* counsel. Ordinarily, only parties to a proposed settlement have standing to object. *See Gould v. Alleco, Inc., 883 F.2d 281, 284 (4th Cir. 1989), cert. denied, 493 U.S. 1058, 107 L. Ed. 2d 953, 110 S. Ct. 870 (1990)*; *In re Sunrise Sec. Lit., 131 F.R.D. 450, 459 (E.D. Pa. 1990)*; 2 Newberg on Class Actions, § 11.55. *See also In re Real Estate Title and Settlement Antitrust Lit., 1986 U.S. Dist. LEXIS 24435, 1986 WL 6531, *6 n.5 (E.D. Pa. June 10, 1986)* ("it is not at all clear that [state attorneys general] have standing to object on behalf of their residents as parens patriae"). The court has nevertheless considered the objections which, in any event, largely track those of Ms. Kirkland. The objections are that the settlement does not prohibit Midland from continuing to force place insurance through affiliates, the release is unduly broad because it encompasses future violations, the settlement may hamper the investigation of Midland's escrow practices by the Georgia Office of Consumer Affairs and the timing of the settlement during the pendency of the Georgia class action is suspect. In fact, the settlement proposed by class counsel in *Kirkland* did not prohibit Midland from continuing to force place insurance through affiliates, the release addresses future claims and not future violations, there has been no demonstration that the settlement would thwart any effort by Georgia to enforce its consumer protection laws, there has been absolutely no showing of collusion and the parties note with some force that if anything is suspect, it may be

the initiation of the referenced investigation one day before the filing of these objections.

[*18]

The court next considers the extent of discovery and the stage of the proceedings. *Kirkland* counsel contends that the settlement agreement was not the product of sufficient legal research and factual investigation. *Hall* class counsel expended 4.2 hours on pre-litigation legal research. While this is not an insignificant amount of time for a proficient lawyer, one would expect more of an attorney starting from scratch. Class counsel, however, had recent experience with force placed insurance litigation and need not replicate their work in each case. While formal discovery in *Hall* was limited, counsel had access to considerable material before effecting the settlement agreement. Counsel spent 36 hours reviewing all discovery provided in *Kirkland*, as well as additional documents voluntarily produced by Midland. *Hall* class counsel conducted two key depositions, no less than those conducted by *Kirkland* counsel before undertaking settlement negotiations. The court is satisfied that the settlement agreement was informed by adequate legal and factual knowledge.

The court next considers the risk of establishing liability. The court will not set forth in detail its [*19] assessment of each of the many interrelated and overlapping claims. The court does note its conclusion that the risk of establishing liability is substantial. As to the RICO claim, for instance, there is no allegation of investment injury, no allegation of an enterprise distinct from defendants and no showing of gambling or usurious loans to support the alleged predicate act of unlawful debt collection. It is far from clear that defendants qualify as debt collectors under the FDCPA or that they engaged in conduct creating a likelihood of confusion. Midland had a contractual right to ensure that mortgaged properties were insured and before a policy was force placed, the mortgagor received three warning letters. The relationship of mortgagor and mortgagee, including one who escrows sums to ensure satisfaction of tax and insurance obligations, is not per se a fiduciary one. Any commissions earned by the affiliates were paid by the insurer and not from escrow accounts. Perhaps most significant, others have asserted similar claims predicated on virtually identical theories without success. [6]

> 6   The Court in *Kirkland* notably certified for interlocutory appeal its denial of the motion for summary judgment of the defendant in that case. In another case from the same district raising similar issues regarding force placement of hazard insurance by a mortgagee, the Court granted the defendant's motion for summary judgment. That decision was recently affirmed by the Elev-

enth Circuit. *See Telfair v. First Union Mortgage Corp., 216 F.3d 1333, 1340-42 (11th Cir. 2000).*

[*20]

The court also considers the risk of establishing damages. Those whose policies were flat-cancelled sustained only a relatively brief loss of the use of funds. Damages might be calculable by multiplying the number of days applicable to each sub-class member by the rate of return at the pertinent time on a conservative short-term deposit or investment. To establish damages for others, one would have to produce evidence of market rates and available alternatives in the pertinent regions at the pertinent times. This would likely involve a battle of experts and considerable documentation. It also appears that some class members may have received a net benefit from the force placement of insurance as they successfully made claims to the insurer for losses which would otherwise have been uncovered. The court believes that some damages could likely be established but the process could be quite cumbersome.

There are far more similarities than differences among the various state consumer protection and unfair trade practices laws, and the same is true of the law regarding fiduciary relationships. The court believes that the risk of maintaining a class action through trial is minimal. Midland [*21] is clearly financially able to withstand a larger judgment.

The court finally considers the reasonableness of the settlement in view of the best recovery and in view of the attendant risks. The settlement fund is $ 1.75 million including costs and attorney fees, contemplated at twenty per cent. [7] The settlement figure is comparable to those in similar suits. [8] It results in a fund equivalent to 16.3% of the commissions realized. It would likely result in a recovery of at least ten per cent of the average force placed insurance premium charged and half that amount for claimants who were flat-cancelled. [9] Should all pertinent legal and factual issues be resolved in favor of plaintiffs, the total recovery could certainly be more substantial. As noted, however, such a resolution is far from assured. *Kirkland* is the only force placed insurance case certified other than for settlement purposes to survive summary judgment. [10] Given the arduousness and expense of full litigation, the obstacles to any recovery and the value of obtaining the benefit of any recovery now rather than years from now, the settlement amount is well within the range of reasonableness.

[7]   The settlement also provides some meaningful equitable relief including disclosures by Midland to borrowers of information about the nature, cost and scope of force placed coverage which would,

*inter alia,* underscore the advantage to borrowers of maintaining their own insurance.

[*22]

[8]   *Kirkland* counsel notes that the settlement figure is less than a third of that demanded by them. The reasonableness of a settlement, however, will rarely be discernible from a demand which was rejected. *Kirkland* counsel also suggested that they refused an offer of a larger amount, however, this has not been demonstrated. It is unclear whether an offer of $ 1.6 million was inclusive or exclusive of fees and costs, a subject which was apparently not discussed. The court is convinced that the offer contemplated not merely a fund for the approximate 10,000 persons in the initial *Kirkland* group but a global settlement for a redefined class, encompassing at least those in *Hall* subclasses I and II. The subsequent delineation of subclass III was in reaction to a lone district court opinion suggesting that the limitations period for a claim predicated on a mortgage is twenty years. In their presentation, even the *Kirkland* objectors acknowledged this is likely a "phantom" subclass.

[9]   With a claim rate approximating that in another recent force placed insurance class action initiated in this district (*Robinson v. Countrywide Home Loans Inc.*), the figure would approximate fifty per cent of the average premium charged. Also, the funds available for distribution to claimants will be further increased by seven per cent with the court's resolution of the request for fees.

[*23]

[10]   Should the Eleventh Circuit rule adversely to plaintiffs on the pending appeal in *Kirkland*, of course, any value of the *Hall* case would plummet.

The court concludes that the settlement is fair, adequate and reasonable under all of the circumstances. It will be approved.

### Fees and Costs

The costs claimed are $ 18,348.30. An attorney who has created a common fund for the benefit of a class is entitled to recover reasonable litigation costs from the fund. *See Lachance v. Harrington, 965 F. Supp. 630, 651 (E.D. Pa. 1997).* The costs have been documented, appear reasonable and have not been challenged by anyone.

It is typical and appropriate in common fund cases to award percentage fees, cross-checked against the lodestar method. *See In re Prudential Ins. Co. of America Sales Practice Lit., 148 F.3d 283, 333 (3d Cir. 1998); Lachance, 965 F. Supp. 630 at 647.* The requested fee of $ 350,000 represents twenty per cent of the settlement

Case 3:07-cv-00161-CFD   Document 42-2   Filed 03/31/08   Page 23 of 24

Page 7
2000 U.S. Dist. LEXIS 16751, *

fund. Given the result in view of the legal obstacles, the efficiency of the recovery, the experience [*24] of class counsel, the quality of opposing counsel and percentage fees typically awarded in other class actions, the fee request is reasonable. *See In re Pacific Enterprises Sec. Lit., 47 F.3d 373, 379 (9th Cir. 1995)* (benchmark in common fund cases is twenty-five per cent adjustable upward or downward depending upon circumstances); *In re SmithKline Beckman Corp. Sec. Lit., 751 F. Supp. 525, 533 (E.D. Pa. 1990)* (noting fee awards have generally ranged from nineteen to forty-five per cent of settlement fund).

Class counsel have calculated the lodestar at $ 173,453.75. This includes $ 12,772.50 for some initial bankruptcy related work performed for Mr. Hall which was tangential to the class action. The documented hours otherwise expended and the corresponding rates normally charged appear reasonable. This results in a lodestar figure of $ 160,681.25.

The lodestar would thus be subject to a multiplier of 2.19 to reach the percentage amount requested. Such a multiplier is not beyond the range typical in comparable class actions. *See In re Prudential, 148 F.3d at 341.*

Nevertheless, the court concludes that because of a particular circumstance, [*25] the requested fee should be reduced. It appears that *Hall* counsel could have settled at one point for $ 1.5 million exclusive of fees and costs. A fee award of $ 350,000 would result in $ 1.4 million for distribution. The court received no satisfactory explanation for this anomaly in response to its query at the hearing. In this circumstance, the fund for claimants should be enhanced by the $ 100,000 differential and the amount for fees correspondingly reduced.

The court will approve the recovery of $ 18,348.30 in costs and an award of attorney fees to class counsel of $ 250,000. [11]

> 11  This will result in a fee of just under fourteen and a half percent of the fund and a multiplier of just under 1.6.

With their request, class counsel also seek permission to distribute a $ 2,000 incentive award to Mr. Hall. Mr. Hall served as class representative and actively assisted counsel to the benefit of the class. In such circumstances, an incentive award is appropriate and the amount requested is reasonable. *See* [*26] *In re Smith-Kline, 751 F. Supp. 525 at 535.*

### Conclusion

Consistent with the foregoing, plaintiff's Motion for Final Approval of Settlement and Certification of Settlement Class will be granted. Plaintiff's Motion for At-

torney Fees and Costs will be granted in that fees of $ 250,000, costs of $ 18,348.30 and a $ 2,000 incentive payment will be awarded.

Appropriate orders will be entered.

### ORDER and JUDGMENT

**AND NOW**, 17th this day of November, 2000, upon consideration of plaintiff's Motion for Final Approval of Settlement and Certification of Settlement Class, and after a hearing thereon and review of all submissions by the various interested parties, consistent with the findings set forth in the accompanying memorandum, **IT IS HEREBY ORDERED** that the Motion is **GRANTED** and accordingly a class is certified consisting of:

all persons with residential mortgage loans secured in whole or in part by real property located in the United States which were serviced or subserviced by Defendant at any time between June 17, 1979 and September 30, 1999 who had Lender Placed Insurance obtained in connection with such a residential mortgage loan at [*27] any time or times during the aforementioned period and comprised of the following three subclasses:

> "Subclass I" which consists of Class Members for whom Lender Placed Insurance was obtained between February 1, 1991 and September 30, 1999 who, as of September 30, 1999, had a Net Lender Placed Premium Assessment in excess of $ 0.00;
>
> "Subclass II" which consists of Class Members for whom Lender Placed Insurance was obtained between February 1, 1991 and September 30, 1999 whose Lender Placed Insurance was Flat Canceled and who, as of September 30, 1999, had a Net Lender Placed Premium Assessment of $ 0.00; and,
>
> "Subclass III" which consists of Class Members for whom Lender Placed Insurance was obtained between June 17, 1979 and January 31, 1991.

**IT IS FURTHER ORDERED** that the parties' settlement is finally approved and accordingly:

the claims of all members of the Class (except those who timely excluded themselves from the Class pursuant to *Fed. R. Civ. P. 23* and Paragraph 4 of the Preliminary Approval Order) are **DISMISSED** with prejudice and without costs except as provided in the Settlement Agreement;

Case 3:07-cv-00161-CFD   Document 42-2   Filed 03/31/08   Page 24 of 24

Page 8
2000 U.S. Dist. LEXIS 16751, *

as of the effective date, each member of the Class [*28] (except those who timely and properly excluded themselves from the Class pursuant to *Fed. R. Civ. P. 23* and Paragraph 4 of the Preliminary Approval Order) forever releases, discharges and is enjoined from suing: (i) Defendants, (ii) the entities for which Defendants service, serviced, or subserviced mortgage loans ("entities") (for the period during which Defendants service, serviced or subserviced the mortgage loans); (iii) each officer, director, principal, agent, attorney, employer, employee, division, owner, or partner of Defendants or such entities (for any period during which Defendants serviced or subserviced the mortgage loans), (iv) any Affiliate; and, (v) any successor (with respect to the period for which Defendants did the servicing or subservicing), predecessor acquired by Defendants, personal representative, estate, heir, beneficiary, administrator or executor of any of the entities and persons described in (i), (ii), (iii) or (iv) above, on any and all past and present released claims of the Class, claims, actions, causes of action, rights or liabilities based on, arising out of or in any way relating or pertaining to: (a) Defendants' Lender Placed Insurance Program; [*29] (b) Defendants' collection, accumulation, handling, custody, control, or use of the premiums, rebates, commissions, fees, expenses or revenues of the Lender Placed Insurance Program; (c) the receipt of commissions, premium splits or rebates, risk sharing participations or any other consideration by Defendants or by any Affiliate of Defendants; (d) disclosures which were or should have been made by Defendants in connection with the Lender Placed Insurance Program; and, (e) any of the events, statements or allegations contained in Plaintiff's complaint;

the released claims of the Class include all claims or causes of action arising from the facts and circumstances alleged in the complaint or which could have been brought in this litigation, and class members waive all rights they have or in the future may have by virtue of *Section 1542 of the California Civil Code* and any other similar law or provision with respect to such claims;

for purposes of this Order, "Affiliate" means: (i) Midland Financial Co., MidFirst Bank, Midland Mort-

gage Co., FirstInsure, Inc., Midfirst Insurance Agency, Inc., Homeshield Capital Co., Homeshield Insurance Co., Homeshield Fire and Casualty Insurance Co. [*30] (collectively the "Companies"), (ii) any employee, agent, officer, or director of the Companies (collectively referred to as "Affiliated Individuals"); (iii) any trust of which any such Affiliated Individual is a grantor, trustee or beneficiary; (iv) any corporation of which any such Affiliated Individual or entity is a shareholder or, as applicable, an employee, officer or director; (v) any partnership or any other unincorporated form of business, or limited liability company in which any such Affiliated Individual or the Companies own an interest; and, (vi) all affiliated companies (i.e. any corporations, business entities, partnerships or other unincorporated forms of business, or limited liability companies which are or were controlled directly or indirectly by the Companies or Affiliated Individuals, or which control or controlled directly or indirectly the Companies or the Affiliated Individuals, or which are or were directly or indirectly under common control with the Companies or the Affiliated Individuals); and,

this civil action is closed.

**BY THE COURT:**

JAY C. WALDMAN, J.

*ORDER*

**AND NOW,** this 17th day of November, 2000, upon consideration of plaintiff's [*31] Motion for Attorney Fees and Reimbursement of Costs, consistent with the court's memorandum herein of this date, **IT IS HEREBY ORDERED** that said Motion is **GRANTED** in that McCullough & Eisenberg, P.C. is awarded attorney fees of $ 250,000 and litigation costs of $ 18,348.30, and is authorized to distribute to the class representative, Gary B. Hall, an incentive award of $ 2,000.

**BY THE COURT:**

JAY C. WALDMAN, J.